ABRAHAM BARNES, EDMUND LYNCH, AND JACOB CRAFT, vs. FRANCIS DODGE.—*December* 1848.

Between 1832 and 1839, judgments were rendered against *B* and his sureties. In October 1839, the defendants, *B*, *T*, *P*, conveyed their property in trust, to sell and pay judgment and other creditors, according to their legal priorities. In 1840 and 1841, the trustees sold parcel of the estate to *D*, and the purchase money was applied by him in discharge of elder judgments, which were thereupon assigned to the purchaser: a full and fair value was paid for the land. In 1838, *L* and *C* obtained judgments against *B* and others, and, in 1844, revived the same, by *scire facias*, against *B* and his terre-tenants, of whom *D* was one. The judgment of *L* and *C* was *junior* to those paid off by *D*. The purchaser, when the *sci. fa.* issued, was a non-resident, and not returned summoned under that writ. The judgment being revived, *L* and *C* were proceeding to a sale of the land, under the lien of their judgment of 1838. It appearing that the amount of the judgments, prior to that of 1838, was more than the value of the whole estate, HELD, that an injunction obtained by *D*, should be continued until final hearing, unless *L* and *C* would bring into court the sum paid by *D*, in discharge of the senior judgments.

The defendants, *L* and *C*, not having assented to nor participated in the formation of the trust created by *B*, and *P* and *T*, nor having ratified the same, are not bound by its terms.

The complainant, *D*, had no defence at law. He could not have successfully pleaded to the *scire facias*. He could not have maintained payment, satisfaction, or release of the judgment of *L* and *C* at law, or that *B* was not seized at the rendition of the judgment.

But in equity, as no combination, fraud, or unfairness appeared in the purchase of the land—as it was sold for its full, utmost, value—as the whole purchase money had been applied by the purchaser, to the payment of the judgments *prior* in date, and *preferred* liens on the land, and as there *then* remained due on judgments a large amount against *B*, prior in point of date to the judgment of *L* and *C*, and as the payment of the judgment of *L* and *C* out of this land was beyond the reach of hope, the purchaser is entitled to relief by injunction, as against such revived judgment and execution thereon.

The 3rd sec. of the act of 1835, ch. 380, shows, that a defendant who has answered a bill for an injunction, may appeal from the granting or refusal to dissolve it upon motion, without waiting for the answers of his co-defendants.

APPEAL from the Equity Side of *Washington* county court.

The bill in this cause was filed on the 14th August 1846, by *Francis Dodge*, and alleged, that *Abraham Barnes* being indebted unto divers persons, and many judgments having been recovered against him in *Washington* county court, as principal

debtor, and *Melchor B. Mason* and *John Thompson Mason,* as his sureties; that the said *Abraham Barnes and wife,* and the said *Melchor B.* and *John T.,* by deed, dated 11th October 1839, conveyed to *David G.* Yost, (since deceased,) and *William Price,* certain lands in *Washington* county—parcels thereof belonging to the said *Abraham Barnes*—other parcels to *Melchor B. Mason*—other parcels to *John T. Mason,* in trust, among other things, to sell and dispose of said lands, and the proceeds thereof to apply to the· creditors of the said *Abraham* and others, by judgment, or otherwise, *according to their just priority;* and, by said deed, the said *Barnes,* also assigned to said trustees a considerable personal estate, for the purpose aforesaid; that the trustees entered upon the execution of the trusts confided to them, and at several times have sold parcels of the said real estate to divers persons, and, *among others, to your orator;* that on the 26th May 1840, and 16th September 1841, he purchased of the said trustees, in two parcels, six hundred and nineteen acres, part of the *Montpelier* estate, for which he obtained a deed, on the 11th December 1844, *and which was a part of the individual estate of the said Abraham Barnes;* that the prices given by the complainant, are truly stated in their said deed; *that the said lands sold for their full and utmost value;* that his purchase money amounted in the aggregate to the sum of $37,885.93, which was fully settled on the 11th December 1844, when he obtained his deed from the trustees; *that the whole of the said purchase money hath been duly applied to the oldest of the said judgments against the said Abraham Barnes, binding said lands,* and advanced to the creditors holding and entitled to said judgments, according to their legal priorities and the trusts of said deed, *and hath been exhausted therein, leaving nothing for the junior judgments,* and that the said several sums *were applied and advanced as follows,* &c.; that assignments were taken to complainant from the said several judgment creditors, at the time he advanced and applied the said sums; *that the judgments to which his purchase money was applied, all bear date prior to the judgment of Lynch and Craft against said Barnes and others,* and which judgment last referred to, was

*not* obtained until the 5th April 1838, and that the aggregate amount of all the judgments obtained in said court against said *Barnes* and others, amounted to $92,892.33, for principal alone, and complainant had well hoped, by his payments, he had obtained an unquestionable title to his purchased lands; but that *Edmund Lynch* and *Jacob Craft,* trading under the firm of *L. & C., having recovered judgment prior to the execution of the said deed of trust, but subsequent to those judgments to which your orator's purchase money had been applied,* have recently caused their said judgment to be revived against complainant and others, as *terre-tenants* of said *Barnes;* that it is only recently said proceedings have come to his knowledge; that said judgment was revived without his knowledge, consent, or approbation; that he resides out of the State of *Maryland,* in the *District of Columbia,* and was never summoned to said *scire facias;* that the entry of the *fiat* upon the writ of *scire facius,* was, by agreement and confession of attorneys of this court, who were the trustees of whom he purchased, and *who undertook, voluntarily, to appear for him;* that he never employed them, and they were in no wise authorised to appear for him, or make such confession or agreement; that the said *Lynch* and *Craft* have caused a writ of *fieri facias* to be issued on said *revived judgment,* and to be laid on the lands so as aforesaid purchased by your orator, and which the sheriff of *Washington* county has advertised for sale, with the purpose, on the part of the said *L.* and *C.,* of coercing payment from complainant of their junior judgment; that *L.* and *C.* had notice of the said deed of trust, after the making thereof, and *acquiesced therein,* and in the assumption by the said trustees of control over the said property; that they suspended all proceedings on their aforesaid judgments, and by other acts indicative of their intention, to look for payment of their claims to the proceeds of sales which should be made by the trustees, *gave credit to the said trustees,* and enabled them to make sales more advantageous to the creditors than could otherwise have been effected, and that and for some time after the said deed, the said *William Price* was the attorney of record of said *Lynch* and *Craft;* that the trustees have

sold certain portions of said *estate* of said *Barnes* to *John Hanson Thomas*, after the sale to complainant; that no part of said *Thomas'* purchase money hath been paid by him to said trustees, but is held by him under the expectation of applying the same to some judgments, in which he is interested, junior to the said judgment of *L.* and *C.;* that the trustees have still undisposed of land. Prayer, for a discovery, account of property on hand, receipts by trustees, and disbursements; that money in hand may be applied to outstanding judgments, according to their just priorities; that it may be declared that the said complainant's purchase money was justly applied to the incumbrances affecting the said land, according to their just priorities, that he may be quieted and protected, in his purchased possession and enjoyment, against all the creditors of *A. B.* and others; that the said *Lynch* and *Craft* may be restrained, by injunction, from enforcing their said execution against the lands of complainant, that, as junior judgment creditors, they may be compelled to go against the other lands of the said *A. B.* bound thereby; that the sheriff may be enjoined from making sale; that the revived judgment as against him may be set aside; that if necessary, he may be subrogated to the rights of creditors, to whom his purchase money has been advanced as aforesaid, and that he may have such other and further relief as, &c.; subpœna, &c.

With this bill was filed :

Copy of the writ of *scire facias*, issued 20th March 1844, by *Lynch* and *Craft*, to revive their judgment of March 1838, against *Abraham Barnes, Melchor B. Mason,* and *John O. Wharton,* to give notice to said defendants, and *also unto the terre-tenants* of all the lands, &c., whereof the said defendants, on the 5th April 1838, were seized, &c.

The sheriff returned this writ, "that *Francis Dodge,* terre-tenant of a part of tract situate, &c., called *M. P.,* which was bargained and sold unto *F. D.* by *W. P.* and *D. G. Y.,* contained in the following, &c., containing, &c., which parcel of land the said *F. D.* is terre-tenant, as aforesaid, *was of the lands and tenements* of the said *A. B.,* on the 5th April 1838, and that the said *F. D. hath not any thing in my bailiwick by*

*which I could give him notice, nor is the said F. D. found in the same."*

Other terre-tenants were summoned; and others not found by the return of the said writ of *scire facias*.

Also copy of the deed of trust of 11th March 1839, from *A. B. and wife, M. B. M.*, and *J. T. M.*, to *William Price* and *David G. Yost.*

List of slaves so conveyed.

List of judgments commencing in 1832 to 1839, inclusive.

Also copy of indenture of 11th December 1844, from *William Price* and *David G. Yost*, trustees, to *Francis Dodge*, which, after describing the premises sold, &c., recited, "that whereas the purchase money for the portions of the above mentioned land hereby bargained and sold, hath been fully paid and applied by the said *F. D.*, at the prices above mentioned, for the sale of said land, with the consent and by the direction of the said parties, *W. P.* and *D. G. Y.*, in manner following, that is to say, $12,422 to, &c.; $5000, $3000, and $6000, to, &c.; $1310.31 to judgment creditors, binding on said land; and $11,000 to *W. P.* and *D. G. Y.*; which hath been applied:—1st, to commissions of said trustees, and 2nd, to judgment creditors, next in priority to those already recited."

Short copies of the judgments paid were also filed with said bill; with assignments thereof to said *Francis Dodge*, under seal.

Also copy of the return of the writ of *fieri facias*, sued out by *Lynch* and *Craft* against *Barnes* and his *terre-tenants*, levied upon the land of complainant.

On the 14th August 1846, the county court, (T. Buchanan, A. J.,) ordered injunction against *Lynch* and *Craft*, and the sheriff of *Washington* county, enjoining them from selling the lands purchased by the complainant, under the aforesaid execution upon bond, &c.

The defendants, *Lynch* and *Craft*, answered the bill, the substance of which answer will be found in the opinion of this court.

The defendant, *William Price*, also answered the bill, and showed the application of the payments received by him in

15      v. 7

discharge of the senior judgments against the said *A. Barnes*, to the full amount of the purchase money received from complainant.

On motion, and on the 11th August 1847, the injunction was continued until final hearing. The defendants below appealed to this court.

The cause was argued before SPENCE, MARTIN and FRICK, J.

By J. T. MASON for the appellants, and
By T. G. PRATT and F. A. SCHLEY for the appellees.

SPENCE J., delivered the opinion of this court.

The bill in this case charges, that judgments amounting to more than one hundred thousand dollars, had been rendered in *Washington* county court, against *Abraham Barnes*, as principal and *M. B. Mason* and *J. T. Mason* as his sureties; that the said *A. Barnes* and wife, and the said *M. B. Mason* and *John T. Mason*, by their deed, dated the 11th of October 1839, conveyed to *David G. Yost* and *Wm. Price*, certain lands belonging to the said *A. Barnes*, and other parcels of land, belonging to the said *M. B. Mason* and *J. T. Mason*, in trust to sell the same, and the proceeds to apply to the creditors of the grantors—judgment creditors—and others, according to their just priorities. The bill further charges, that said trustees, *Yost* and *Price*, did sell to various persons, at different times, all the land conveyed to them by said deed, except about 250 acres, which remained unsold; and among others they sold to the complainant, on the 26th of May 1840, and the 16th of September 1841, 619 acres of land, which had belonged to *Abraham Barnes*, and which was conveyed to said trustees for the sum of $37,885.93, and this sum is charged in the bill to have been "the full utmost value of the said land."

The bill further charges, that the whole of the purchase money was applied, by the complainant, to the payment of the oldest judgments against said *A. Barnes*, and which were binding on said land, according to their legal priorities, and according to the provisions of said deed of trust.

The bill sets forth the particular judgments to which the complainant's purchase money was applied, and alleges, that said judgments were, at the period they were paid by him, assigned to him. The complainant charges, that he paid the whole amount of the purchase money in the discharge of the oldest judgments against *A. Barnes*, and that having so discharged his obligation, for the purchase money, the trustees, *Yost* and *Price*, did on the 11th of December 1844, execute a deed to the complainant for said land.

The bill also charges, that the judgment of *Lynch* and *Craft* was obtained on the 5th of April 1838, and that the aggregate amount of all the judgments obtained in said court, against said *Barnes* and others, binding on said lands, and prior in date to said judgment of *Lynch* and *Craft*, was the sum of ninety-two thousand, eight hundred and ninety-two dollars and thirty-three cents.

The bill avers, that the complainant resides in the *District of Columbia*, and that since his purchase, and since his application of the purchase money, as above charged, the said *Lynch* and *Craft* have revived their said judgments against the complainant and others, as terre-tenants of *A. Barnes*, without knowledge, consent, or authority of the complainant, and have caused a *fieri facias* to be issued on said judgment, and levied on the lands which had been purchased and paid for by him, as aforesaid. The bill avers, that the said *Lynch* and *Craft* absolved the complainant from the obligation of seeing that his purchase money was duly and properly applied; for it charges that *Lynch* and *Craft* had notice of the deed of trust after the same had been executed, and acquiesced therein.

The bill also charges, that a portion of the land conveyed by said deed, was sold by the trustees to one *John H. Thomas*, who has not paid the purchase money, but claims to apply the same to the payment of a judgment against the grantors, *Barnes* and *M. B. Mason* and *J. T. Mason*, held by said *John H. Thomas*, subsequent in date to the judgment of *Lynch* and *Craft*.

The bill prays for an injunction against *Lynch* and *Craft*, and subpœnas against them and the other defendants.

The defendants, *Lynch* and *Craft*, filed their answer to the bill, and made a motion for the dissolution of the injunction, pending this motion, and before hearing, *Price*, another of the defendants, filed his answer.

The answer submits, that if all the allegations of the complainant's bill were true, that he had no redress in equity but that his remedy was at law; against his attorneys, if they had neglected their duty, or exceeded their authority.

The only allegation in the bill which the answer denies, is, that they ever assented to, acquiesced in, or recognised said deed of trust, never having known or seen the same, or been informed of its contents, nor ever acquiesced in the said trustees assumption of the contract over said property.   This denial of all participation in the transactions between *Barnes* and the *Masons*, with *Yost* and *Price*, in relation to the trust, and the proceedings under the same, does, in the absence of proof to contradict this averment of the answer, discharge the defendants from all the legal effect of that proceeding upon their legal rights, as judgment creditors.

The answer insists, that the defendant had adequate and complete defence at law; this defence we have endeavored to discover.   What defence could *Dodge* have made at law? What plea could he have successfully pleaded to the *sci. fa.*? He could not have maintained, either the plea of payment and satisfaction of the judgment, or release; or that the said *Abraham Barnes*, or any other person or persons, to the use of the said *A. Barnes* and his heirs, at the time of the rendition of the judgment in the writ of *scire facias* mentioned, were not seized of the lands and tenements, or any parcel thereof, in their demesne as of fee; and unless he could have proved, that the judgment of *Lynch* and *Craft* was obtained subsequent to the date of the deed of trust to *Yost* and *Price*, or that it had been paid and satisfied, or that the judgment had been released or surrendered, he could not, at law, successfully have resisted the fiat on the *scire facias*.

The answer alleges no charge of combination, fraud, or unfairness, in the purchase of the land by *Dodge* from *Yost* and *Price*.   It does not deny that *Dodge* purchased the land

at its "full utmost value;" that he had applied the purchase money to the payment and satisfaction of the judgments, which were prior in date and preferred liens on the land; that he had thus paid and applied the whole amount of the purchase money, which he contracted to give for the land; and that there then remained due on judgments a large amount against *Barnes* and the *Masons*, prior, in point of date, to the judgment of *Lynch* and *Craft*. These allegations in the bill, not denied by the answer, clearly entitle the complainant to the interposition of a court of equity. The judgments paid by *Dodge* being prior in date, and so large in amount, placed the satisfaction of the judgment of *Lynch* and *Craft*, from this land, beyond the reach of hope.

If we are to take the allegation of the bill as true, (and the answer does not deny it,) that the aggregate amount of all the judgments obtained in said court against said *Barnes*, and binding said lands, and prior in date to the judgment of *Lynch* and *Craft*, was the sum of ninety-two thousand, eight hundred and ninety-two dollars, and thirty-three cents, there then still remain—after the payments made by *Dodge*, of $37,885.39, on the oldest judgments against this land, and which the answer does not deny to be the full value of the land—judgments, which are a lien on the land, greater in amount than *Dodge* has paid, and prior, in date, to the judgment of *Lynch* and *Craft*.

If, therefore, *Dodge* be coerced by force of the *fieri facias* of *Lynch and Craft*, to protect himself, and to secure the money which he has thus paid, he will be obliged to have writs of *fieri facias* issued on all the judgments which he has paid and satisfied, as aforesaid, and the land sold, at his own cost; for it is not denied by the answer, that he has paid the full value for it. This would be against equity and conscience.

*Judge Story*, in his work on equity, states it as a general principle in regard to injunctions after a judgment at law, that any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed

himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will authorise a court of equity to interfere, by injunction, to restrain the adverse party from availing himself of such judgment. *Story's Equity, sec.* 887. And again, in sec. 894, he says: " Relief will be granted, where the defence could not at the time, or under the circumstances, be made available at law, without any laches of the party."

*Chief Justice Marshall,* in the case of the *Marine Insurance Company vs. Hodgson,* reported in 7 *Cranch,* 332, recognises the same principle, when he says: " It may safely be said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or, of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

Our conclusion, therefore, from the record in this case, is, that *Dodge* purchased the land, *bona fide;* that he paid full value for it; that he applied the purchase money to the payment of the judgments which were prior in date, and preferred liens; that these judgments have precedence of the judgment of *Lynch and Craft;* that he had no defence, at law, to the *scire facias* on *Lynch* and *Craft's* judgment; but that, in equity and conscience, he, under the circumstances of this case, ought to be reimbursed or satisfied the amount of money which he had paid and advanced on judgment, which, in law, took precedence to the judgment of *Lynch* and *Craft,* before they are allowed to sell said land under the *fieri facias* on their judgment.

The injunction should, therefore, be continued until final hearing; unless *Lynch* and *Craft* bring into court, or pay to *Dodge,* the amount of money, so as aforesaid paid by *Dodge* on said judgments.

The 3rd section of the act of 1835, ch. 380, is a conclusive answer to the objection, that the appellants have no right of appeal before all the defendants had answered.

The order of court is affirmed with costs, and the case remanded, that such further proceedings may be had therein as the nature of the case may require.

ORDER AFFIRMED, AND

CAUSE REMANDED.