JOHN B. EMERY AND CYRUS GAULT, AND JOSEPH YAGER, *vs.* CORNELIUS H. OWINGS.—*June* 1849.

Where arbitrators failed to give notice to the parties interested, of the time and place of their meeting, to act upon the matters submitted to their arbitration, their award was, for this reason, HELD to be invalid and void.

Where arbitrators, to gain information respecting the matters in dispute, examined the books of one of the parties, without notice to, and in the absence of the other party, and without proof of the correctness of the statements and entries in said books, it was HELD, that such conduct would vitiate and render null their award.

A lien upon certain real estate was given by a mortgage, to secure the payment of a sum of money to be ascertained by the award, of two persons to be chosen by the parties to the deed, with power to said persons, in case they disagreed, to chose an umpire. And the said referees, taking the *data* stated in the mortgage as their rule or guide, were to make out their award and return the same to the parties in writing, within thirty days after their appointment. HELD:

That this mortgage was a security and lien for the amount of an award to be thus made, and for nothing more, and the award having failed, by reason of misconduct in the arbitrators, the mortgagees can have no relief in equity upon a bill for the sale of the mortgaged property, and the specific execution of this contract.

The parties having themselves stipulated the mode by which the amount, to be a lien on the lands, should be ascertained, a court of equity has no jurisdiction to compel the parties to adopt any other mode.

There being no proof that the defects in the award were at the instance or by the procurement of the complainants, their bill should have been dismissed, without prejudice.

APPEAL from the Equity Side of *Baltimore* county court.

The bill in this case, was filed on the 14th of September 1843, by the appellants, against the appellees, alleging that on the 25th of July 1836, *Beale, Cornelius H.* and *Caleb D. Owings,* the owners of "*Fox Rock Quarry*" in said county, being desirous to construct a private road from said *Quarry,* to the line of the *B. & O. Rail Road,* entered into a contract in relation to the construction thereof, with a certain *Charles Wood,* your orator *Yager,* and one *Edward Green,* the terms of which are particularly set forth in a certain indenture, dated said 25th of July 1836, and exhibited with the bill. After

stating the assignment of said *Wood's* interest in said mortgage to *Emery and Gau't;* the bill avers that the complainants advanced large sums of money, and constructed the said road and bridge mentioned in the mortgage, as contemplated by the parties thereto, and that after said road was thus completed, and after the expiration of five years from the date of said mortgage, to wit, on the 18th of August 1841, arbitrators were appointed according to the provisions of said deed, to estimate the value of said road, who being unable to agree, appointed an umpire; and that on the 28th of September 1841, two of said arbitrators made out and delivered to the parties, an award in writing, signed and sealed by them, whereby they awarded and determined that the parties of the first part to said indenture, should pay to the parties of the second and third parts thereto, or their assigns, as the value of said road and bridge, the sum of $5130, and interest on $1833.34, part thereof, for five years, and interest on $5500, for two months, which sum the defendants have not paid; and the bill then prays for a decree for a sale of the mortgaged premises, the *"Fox Rock Quarry,"* to pay the sum due the complainants on said award, and for general relief.

*Exhibit A* is the indenture executed on the 25th of July 1836, between *Beale Owings, Cornelius H. Owings,* and *Caleb D. Owings,* of the *first* part, *Charles Wood* and *Joseph Yager,* trading under the firm of *Wood & Co.,* of the *second* part, and *Edward Green,* of the *third* part. It recites, that a decree had been recently passed by *Baltimore* county court, in a cause in said court, wherein *Noah Worthington,* and *Comfort Worthington,* were plaintiffs, and *Caleb D. Owings,* and others, defendants, awarding to the defendants a certain private way over the lands of the said *Worthingtons,* for which said defendants were to pay them the sum of $700. The deed then, after setting out the contract between the parties in reference to the construction of the road, which is fully stated in the opinion of this court, further recites: "And whereas, for the purpose of securing to the parties hereto, of the second and third parts, and their representatives, at the period hereinbefore mentioned, the payment of such sum of money as shall be awarded by the arbitrators so as aforesaid to be appointed, or a majority afore-

said, as the value of the said road, in the manner hereinbefore provided for, with interest as aforesaid, the said parties hereto of the first part have consented and agreed to execute these presents. "Now this indenture witnesseth," &c., conveying to the parties of the second and third parts, "all that piece of ground called "*The Fox Rock*," which is contained within the following metes and bounds, beginning," &c., "containing six acres more or less, together with the use and privilege of the private road hereinbefore mentioned, and all other the rights, privileges, advantages and appurtenances, to the same belonging, or in any wise appertaining." The condition of this deed is, that if the parties of the first part, or their representatives, "do, and shall, at the expiration of five years from the date hereof, well and truly pay, or cause to be paid unto the" parties of the second and third parts, or their legal representatives, "such sum or sums of money as shall be awarded by the arbitrators to be appointed as hereinbefore provided for, or a majority of them, as the value of the aforesaid road, to be ascertained and determined in the manner hereinbefore stated, with legal interest, semi-annually, on one-third of said amount, from the respective periods of making the advances aforesaid, then this indenture to be void," &c. It also contains a covenant by the parties of the first part, to execute further assurances "for the better securing to them, the said parties of the second and third parts, such sum or sums of money as shall be awarded to them, the said parties of the second parts, by the arbitrators so as aforesaid to be appointed, or a majority of them, in the manner hereinbefore stated, with interest, as aforesaid, according to the purport, true intent and meaning hereof."

On the back of this deed was the following endorsement: "We whose names are hereunto subscribed, agree to extend the time for the payment of the within mortgage, to *Beale*, *C. H.* and *Caleb D. Owings*, to the 25th day of July 1843, in case it be not paid punctually at maturity.

BALT., *Dec. 12th*, 1836.       EDWARD GREEN,
   "Witness—*J. B. Emery.*"       JOSEPH YAGER."

The answers of the defendants admit the execution of the mortgage, and that divers sums of money were advanced by

the parties thereto of the second parts, and applied for the purposes set out in the bill in the construction of said road and bridge. They also admit that a continuous rail road from the "*Fox Rock Quarry*," to the *B. & O. Rail Road*, was completed in the early part of the year 1841, but they altogether deny that said road was located as required by the terms of the agreement, as contained in said mortgage, or that the same was completed within the time required by the terms and true construction thereof. They also admit the appointment of arbitrators as charged in the bill, and that an award was made by them, but aver, that they had no notice of the meeting of said arbitrators immediately preceding the making of said award, nor of the meeting when said award was made. That at the first of said meetings, as defendants have since heard and believe, important testimony was given on behalf of the complainants in regard to the value of iron rails placed on said road which the arbitrators charged as so much iron furnished by the complainants, whereas respondents charge that said iron is the property of the *B. & O. Railroad.*

A commission was then issued, and testimony taken in relation to the amount of advances made by the complainants, towards the construction of the road; the conduct of the arbitrators in making their award, and various other matters, not necessary to be stated, the purport of which, so far as it relates to the award, is fully stated in the opinion of this court.

The court, (LE GRAND, J.,) on the 18th of May 1847, passed an order, dismissing the bill, with costs, and delivered the following opinion:

" In the view which I take of this case, it is not necessary that all the questions, so fully argued by the solicitors of the respective parties, should be decided. The main and all-important question is: *For what is the mortgage, of date the 25th of July* 1836, *a security* ? The bill is filed for the purpose of procuring a decree, to sell the mortgaged premises to pay the sum awarded to be due, by the award filed among the proceedings and made part of the bill. If the mortgage be only a security for the advances ascertained by the *award,* and if there be no sufficient award, then this court cannot de-

cree a sale of the property. A careful examination of the mortgage has satisfied me, that it is a security for nothing but the amount ascertained by the award to be the value of the road. After several recitals in regard to the road, the deed proceeds to declare, that the mortgagors "have agreed to *purchase* the said road, at the termination of five years," &c., and "to pay" the mortgagees "the full value thereof, *to be fixed and ascertained*" by referees, &c. It is then provided that, " Whereas, for the purpose of securing to the parties hereto of the second and third parts, (the mortgagees,) and their representatives, at the period hereinbefore mentioned, the payment of such sum of money as shall be awarded by the arbitrators so as aforesaid to be appointed, or a majority aforesaid, as the value of the said road," &c., "the said parties hereto, of the first part, (the mortgagors,) have consented and agreed to execute these presents."

It is manifest that the mortgage was only given as a security for the payment of such sum as might be awarded by the arbitrators, and not for the value or costs of the road, without reference to any award. This being so, if there be no sufficient and valid award, it is obviously clear, that this court cannot decree a sale of the mortgaged premises, to pay that for which they never were intended or designed to be a security. But it is supposed, and it has been so argued, by the counsel for the complainants, if the award be defective, or in other words, if there be no award under the prayer for general relief, this court is competent to decree a sale of the property, to secure the payment of so much as may be found to be justly due the complainants, agreeably to the *data* specified in the mortgage. To this view it is but necessary to answer, that the property is not mortgaged to pay anything but the sum ascertained by the award. Had the mortgage been a security for the payment, to the mortgagees, of the value of the road, on the *data* contained in it, the court would decree a sale of the property: for although there could be no recovery of the sum in the award, yet as there is no such thing known to equity as the distinctions in actions, which are recognised at law, the complainants would be entitled to a decree for such sum as they might show

themselves to be justly entitled. But such is not the case; the mortgage was not given to secure anything, but the payment of the sum awarded by the referees, and if there has been a failure to make a valid award, or if there has been a departure from the terms of the contract, the complainants must go into a court of law, to recover what they are entitled to, under any new contract which they may have made with the defendants. For although the law will not admit of the alteration of a sealed by a parol contract, yet its justice forbids, that one man may enjoy the fruits of the labor of another, without paying for it. The failure to recover on the covenant, does not prevent a recovery *in assumpsit*, on the faith of the new contract, according to the value of the thing made or done under it. So, therefore, if the road was made and accepted on a contract different from that specified in the mortgage, the complainants are entitled to make such contract the groundwork of an action, but they cannot hold the mortgaged premises as a specific pledge for the fulfilment of such contract, simply because they were never so pledged. This being so, the only question remaining to be considered, is, whether there be a sufficient and valid award in this case ?

It is conceded by the counsel for the complainants, that the award is bad, in so far as it relates to interest; but he insists that this does not invalidate the award: for awards may be good in part and bad in part. This is undoubtedly true, when the matters in the award are independent of each other. It is not necessary 1 should consider, whether the subjects of this award are so or not, for it is manifestly bad on various grounds: 1st. There is no evidence that it was *delivered* to the parties to the mortgage. One of the witnesses proves, that he thinks a copy of it was given to one of the mortgagors, but he does not say when: whilst the terms of the mortgage require, that it should have been made and delivered before the expiration of thirty days from the time of the reference. But apart from this, a copy should have been delivered *to each of the parties.* 1 *Bacon,* 345. *Kyd on Awards,* 116. *Huntgate vs. Meade, Cro. Eliz.,* 885.

Besides this, the parties should have had notice of the *ad-*

*journed* meetings, and of their objects; of the referees, &c.  6 *H. & J.*, 486, and 8 *Pet.* 178, 179.   This is not proved.   Again, the referees, without the knowledge of the mortgagors, took improper evidence, in that they examined the books of the complainants for the purpose of ascertaining the value of iron on the road.   On this ground, all the analogies of the law, show, that the award is bad in whole.   *Kyd on Awards*, 354, 356.   *See*, also, the case of *Van Cortlandt vs. Underhill*, 17 *Johns.*, 405.   Holding these views, the bill of complaint must be dismissed.   But if the road was made on a different line from that specified in the mortgage, at the instance and request of the defendants; or in other words, if the claim of the complainants arose out of a contract different from that in the mortgage, and this can be made to appear; the law does not withhold from them a remedy to recover the amount due them for their work and labor: but this court cannot hold the property as security for any thing *but for that which is stipulated in the mortgage*.   It is for the parties alone *to make* their contracts, that of the court being confined to their enforcement.

It is ordered this 8th day of May, A. D. 1847, that the bill of complaint in this case, be, and the same is hereby dismissed, with costs.''

From this order the complainants appealed.   Other questions were presented by the record, which have not been referred to here, because they were not decided in this cause; and, besides, they will be found fully reported in the cases of *Emery and Gault, vs. Owings*, 6 *Gill*, 191; *Owings and Griffith, vs. Emery and Gault*, ib., 260.   And *Owings, use of Green, vs. Emery and Gault, ante*, 405.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

By HINKLEY and NELSON for the appellants, and
By McMAHON and BRENT, for the appellees.

SPENCE, J., delivered the opinion of this court.

The object of the bill in this case is to obtain a decree for the sale of the mortgaged premises, for the payment of a sum of

money, charged to be due under an award made in pursuance of the provisions of a mortgage deed, bearing date the 25th July 1836.

The questions to be decided, arise under the contract recited in the deed, which is as follows:

"Whereas, it is contemplated to continue the said private road from its nothern termination through the grounds of *Nicholas Owings*, to the ground hereinafter described, known by the name of *Fox Rock*, so as to form one entire road or way, from said last mentioned premises to the *Patapsco Falls*, and thence by means of a bridge to be constructed over said *Falls*, to intersect the line of the *Baltimore and Ohio Rail Road*. And whereas the said parties hereto, of the second and third parts, have agree d to advance to the parties of the first part hereto, a sum of money, not exceeding the sum of five thousand and five hundred dollars, which sum, or so much thereof as may be necessary to be applied by them to the payment of the amount awarded by the county court aforesaid, to the said *Noah* and *Comfort Worthington*, and to the costs of the court and other expense in obtaining the aforesaid decree, and to be advanced and applied in the construction of the aforesaid entire road from *Fox Rock* to the *Baltimore and Ohio Rail Road*, including the bridge to be constructed over the *Patapsco Falls*. And whereas the parties of the second and third parts hereto, have agreed to give to the said parties of the first part a credit of five years from the date hereof, upon the amount which has or shall hereafter be advanced by them for the purposes aforesaid, to be ascertained and determined as hereinafter provided for with interest on one-third part thereof only, semi-annually, to commence as the advances are made, and to terminate at the expiration of the said five years, and interest on the whole amount of said advances, or so much thereof as may remain unpaid from and after the expiration of said five years. And whereas the said parties hereto of the first part, have agreed to purchase the said road at the termination of the said five years from the date hereof, and to pay to the parties hereto of the second and third parts the full value thereof, to be fixed and ascertained as the *data* thereof, by reference to the amount adjudged by the

county court aforesaid, (of *Baltimore,*) to the said *Noah* and *Comfort Worthington,* for the costs of court, and all necessary expenses in obtaining the decree for said road, and all costs of constructing said road, and the bridge to be constructed over the *Patapsco Falls,* as aforesaid, taking also into consideration, and making allowance for the wear and tear of the said road, and the injury and the deterioration thereof, by reason of the use and occupation of the same, during the said term of five years. And it is hereby agreed between the parties hereto, respectively, that the value of the said road, upon the principles above laid down, shall be ascertained and determined at the expiration of the period of said five years, by two competent and disinterested persons, one to be chosen by the parties hereto of the first part, and the other by the parties hereto of the second and third parts, with power to said persons, in case they disagree as to the said value, to choose a third person, and the said referees, or a majority of them, taking the *data* hereinbefore stated as their rule or guide, shall make out their award or valuation of said road, in writing, and return the same to the parties hereto, or their representatives, within thirty days after their said appointment."

We have made this large extract from the mortgage deed of the 25th of July 1836, because, according to our view, all the questions arise out of it which are to be decided in this case. The complainants' bill charges, that the rail road and bridge were constructed by the appellants, within the time prescribed by the contract, recited in the mortgage deed.

The answers of the respondents, admit, that a road and bridge were constructed by the appellants or their assignees, but deny that the road and bridge were constructed according to the meaning and intention of the parties as set forth in said contract.

The bill also charges, that persons were appointed by the parties, as arbitrators, at the termination of the five years, as provided for by said contract, to ascertain the value of the road and bridge, and the cost of the work; that the arbitrators made their award in pursuance of their authority, and made a return thereof to the parties.

The answers of the respondents admit the appointment of

the arbitrators, and that they made an award, but charge that the course and conduct of the arbitrators was so irregular and illegal, as vitiated and rendered null and void their award.

The answers charge, that the arbitrators gave no notice to the appellees of the time and place of their meetings, when acting upon the subject matters submitted to their arbitrament and decision. That without the knowledge or consent of the appellees, they examined the books of the appellants to obtain information touching the advances made by the appellants, when the appellees were not present.

The first question presented for decision, is the validity of the award. And first, as to the failure on the part of the arbitrators to give notice to the parties. The evidence, so far from proving that notice was given by the arbitrators to the respondents, of the times and places, and objects of their meeting, that our conclusion from the evidence of the arbitrators themselves, is, that no such notice was given. And the conclusion is quite as clear, that the arbitrators, *Burton* and *Moke*, at their meeting in the city of *Baltimore*, in the absence of the respondent, examined the books of *Emery and Gault*, and an account kept there, of the cost of the road, without requiring or obtaining any further proof by oath of witnesses, or otherwise, as to the correctness of the charges, or the fact of furnishing the materials therein charged, to the road.

In the case of *Rigden vs. Martin*, 6 *Har.* and *Johns.*, 406, the court say, "That the parties ought to have notice of the time of meeting, is a position so strongly supported by common justice, that it would seem not to require the aid of authorities."—"Where the person to whom the parties have agreed to refer the matters in dispute has consented to undertake the office, he ought to appoint a time and place for examining the matters, and give notice of such appointment to the parties, or their attorney." *Kyd on Awards, p.* 95. We hold, therefore, this award invalid and void, both upon reason and authority, for this cause. Again, the conduct of the arbitrators in examining the books of *Emery and Gault,* without notice to, and *in the absence of,* the respondents, and without proof of the correctness of the statements and entries in those

books, was conduct so inconsistent with all the principles of law recognized in the impartial administration of justice, as would vitiate and render null and void their award.    To hear the cause of a party in his absence, and without notice, would be bad enough in all conscience, but in his absence, in such a case, to decide his cause upon the declarations of his antagonists, made when he was absent, surely is without precedent. An award made under such circumstances, we cannot sanction. But the argument of the appellants' counsel insists, that the appellees by their acquiescence and acts have waived all objections to the irregularities and illegalities of this award.   We find nothing in the record to warrant this conclusion.    There is no evidence in the record of the delivery of a copy of the award to these parties, and especially within the time prescribed by the contract.

It is true, that at the expiration of the time limited, to wit, five years, they took possession of the railroad.    This they did, independently of any authority derived from the appellants.    But it is insisted, that as the appellants have performed their part of the contract, they have advanced their money, constructed the road and bridge, and that any irregularity or improper conduct on the part of the referees ought not to prevent the recovery by them of the money advanced, and for the labor bestowed in the construction of this road and bridge.    This brings us to the interpretation of the contract.

By the mortgage deed, a lien is given upon certain real estate, described in said deed, to secure the payment of the cost of the erection of the railroad and bridge, described in the mortgage.    The amount or sum which the mortgage deed was given to secure, and which was a lien upon the land, was to be ascertained by the award of two persons, one to be chosen by the parties thereto of the first part, and the other by the parties thereto of the second and third parts, with power to said persons, if they disagreed, to choose a third person, and the said referees, or a majority of them, taking the *data* as stated in the deed as their rule or guide, were to make out their award or valuation of said road in writing, and return the same to the parties, or their representatives, within thirty days after their appointment.

It is clear from a fair interpretation of this contract, that this mortgage is a security and lien for the amount of an award thus made, and for nothing more. We have before said, that the award relied on in this case, and for the payment of which the bill claims a decree for the sale of the mortgaged premises, is for the reasons before stated, a nullity. What relief, then, can a court of equity afford in this case, and preserve the lien? A court of equity cannot order or decree the appointment of other and different arbitrators. This would be to make a new contract for the parties, when the prayer of the bill is for a decree, for the specific performance of the contract set forth in the bill. If a court of equity were to ascertain the amount of advances made in the construction of the road and bridge, it would not be in accordance with the contract; for by the contract the parties have agreed, that the ascertainment of the amount for which the mortgage is to be a lien, is to be made by persons of their own choice. The parties having stipulated the mode by which the amount to be a lien on the land shall be ascertained; a court of equity has no jurisdiction to compel the parties to adopt any other mode. *Vide* 2 *Simons and Stewart*, 418, *Agar vs. Marklew.* 6 *Ves.*, 815. 12 *Ves.*, 400. Against this doctrine, much reliance, in the argument, was placed on the case of *Cheslyn vs. Dalby*, 2 *Younge and Collyer's Reports*, 170. We have examined this case with care and interest, to learn if it warranted the conclusion deduced from it, but in vain.

This was an application for the reconveyance of premises mortgaged for the security and payments of certain accounts, to be ascertained by arbitration, which failed, by reason of the death of the arbitrator. "What is now to be done?" says *Alderson, B.*, " Here the arbitration originally agreed on, has, by the death of the arbitrator and umpire, been wholly frustrated." "Here," (says the court,) "the plaintiff, *Cheslyn*, comes into equity to ask relief, and before he can obtain that relief he must of course perform what the court shall deem to be equitable, that is to say, the substance of his agreement." In the case of *Cheslyn* and *Dalby*, there was an agreement for a specific mode of ascertaining the balance due; that mode failed by events over which the parties had no control. But, says

the court, " if *Mr. Cheslyn* has admitted that there is a balance due, and has, by a deed executed under such circumstances, as that it ought to be enforced, agreed that his estate shall be subject to a lien for that balance, why am I to decree a reconveyance of the estate, without compelling him to fulfill that part of his agreement?" The case was for this reason referred to the master, that he should take the account and ascertain the balance. The case we are called upon to decide, differs in this controlling particular, from the case of *Cheslyn vs. Dalby*; the latter case was an application to a court of equity for a reconveyance of mortgaged premises, the reference to ascertain the balance due having failed, by reason of the death of the arbitrator. This case is an application by the mortgagees to a court of equity, to enforce the specific performance of a contract, by the payment of a sum of money, to be ascertained and determined by the award of arbitrators, to be chosen by the parties, in the mode and upon the *data* prescribed in the mortgage deed; but we have seen, that there is no award in this case which the court can enforce.

If this were an application by the mortgagors for a reconveyance of the mortgaged premises, upon the ground that there was no legal and valid award by reason of the improper course and acts of the arbitrators, the answer would be, true, but you shall do equity before you receive equity; and we will have an ascertainment of the value of the railroad and bridge, as stipulated in your contract, and you shall pay the amount thus ascertained, before we grant you the relief asked. In this case, although we are of the opinion, that the court did not err in not granting to the complainants the relief sought by the bill, yet inasmuch as there is nothing in the record to show, that the vices in the award were, at the instance, or by the procurement of the appellants, we think the court below did err in not dismissing the bill without prejudice, and for this reason we reverse the decree of the county court, with costs, to the appellants, and will sign a decree dismissing the bill without prejudice and without costs.

DECREE REVERSED, AND BILL DISMISSED<br>WITHOUT PREJUDICE.