# Robert J. Young and wife, and others, *vs.* Edward Reynolds and others, Exc'rs of Joseph W. Reynolds.

A judgment for the penalty of a bond to be released on payment of such sum as should be ascertained by referees, merges the bond and is *final*, but is not and cannot be effective until the amount is ascertained.

It is a well established principle, both at law and in equity, that referees ought to appoint a time and place for examining the matters referred to them, and give notice of such appointment to the parties or their attorneys.

Judgment for the penalty of a bond was recovered in 1833, to be released on payment of such sum as should be ascertained by a referee. This referee made no award, and a *scire facias* issued, and a *fiat* was obtained in 1844, to be released on payment of such sum as should be ascertained by two other referees, who did not make their award until 1849, several years after the death of the judgment debtor, and without ever having given notice to him or any one to be prejudiced by it. HELD:

That though this judgment was valid, the ascertainment of the amount due is not binding on the heirs of the judgment debtor, and the indebtedness on the judgment is a proper subject of inquiry by a court of equity, in proceedings in which such judgment is set up as a claim against the estate of the judgment debtor.

A court of equity would have enjoined the execution of such a judgment, and regarded the act of the referees under the circumstances as invalid and of no effect.

Young and wife, *et al.*, *vs.* Reynold's Exc'rs.

In all cases where a judgment is obtained at law because certain equities, cognizable in a court of equity, cannot be availed of at law, equity will enjoin the execution of the judgment until right and justice be done between the parties.

Though the failure to pay an instalment, when due, forfeits the whole bond, and the judgment is for the penalty of the bond, yet if all the instalments are not due when the judgment is obtained, the plaintiff must have a *scire facias* to recover future instalments; the judgment remains as a security to answer damages for further breaches of the covenant.

APPEAL from the Court of Chancery.

This case is connected with the preceding, and is an appeal taken by the heirs at law of Thomas Mackall from the decree of the chancellor, overruling their exceptions to claim No. 1 against the estate of said Thomas, and allowing the same. The exceptions were that the claim was not fully proved and was barred by limitations. All the material facts of the case relating to this claim are stated in the opinion of this court, and also in 3 *Md. Ch. Decisions*, 398, where the opinion of the chancellor is reported.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Thomas G. Pratt* for the appellants.

This claim is founded upon the bond of Thomas Mackall, payable to Joseph W. Reynolds, as trustee for the sale of the real estate of John G. Mackall, dated 14th of September 1830. Now this bond was not the *individual property* of Reynolds, and his executors cannot set it up as an evidence of debt against the estate of Mackall. If Reynolds were alive he could not have assigned or in any manner transferred it—he was the mere officer of the court to collect it for the benefit of the estate of which he was trustee. There was a *judgment* recovered upon it, but if the bond did not belong to Reynolds the judgment will follow the nature of it. But this judgment was a nullity upon the day of its rendition in May 1833. When suit was brought in September 1831, the first instalment only was due, and the judgment in May 1833 was for

such sum as Baden should say was due. Now the endorsements upon the bond itself show that before this time payments had been made exceeding this instalment, so there was in fact nothing due at the date of the judgment. If a blank is left it must be ascertained before the judgment is valid, (5 *G. & J.*, 52,) but if the blank is to be filled up with nothing it would be, *per se*, a nullity. The *fiat* was for so much as Randall and Dalrymple should say was due, but this only gave them the right to ascertain what was due at the day the original judgment was rendered. A *scire facias* is not an original writ, (2 *Sellon's Pr.*, 187, 188,) it requires the parties to come in and show cause why execution should not issue upon the original judgment, and in this case the party was not entitled to such execution as I have shown. This *fiat* was in May 1844, Mackall died in 1846, and no award was made by the referees until 1849, when the *fiat* itself was dead in the eye of the law, and another *scire facias* should have been issued. They could not act after the death of Mackall, their only remedy was by a *scire facias*. 2 *Kent's Com.*, 828, 829.

But the proof is defective. There is but a short copy of this *fiat* which is not evidence. The act of 1832, ch. 302, does not require exceptions to the *sufficiency* of the evidence. 7 *G. & J.*, 202. We ask for full proof, and where this is done a short copy cannot be filed as evidence of the judgment—the party must produce the *best proof*. There is moreover no proof that the personalty was exhausted.

*Alexander Randall* for the appellees.

The whole proceedings assume that there is an insolvency of the personal estate of Thomas Mackall. The answer offers to pay the balance due on the bond if it can be made out, and no exception has been taken to the proof offered in support of the claim. A full copy of the record of the judgment is set out in the cause. But if this were not so the short copy ascertains the amount due, and being without exception is sufficient.

48      v. 4

The objection to Reynold's right to recover this money, *concedes* that the action on the bond was properly brought by him. 2 *G. & J.*, 445. There is then no legal objection to the judgment. Where a bond is payable by instalments as soon as one becomes due the whole bond is forfeited, and a *stet* is entered until the balance becomes due. 2 *Saunder's Rep.*, 216. 3 *H. & McH.*, 95. Every legal intendment will be made in favor of the judgment as it stands. 3 *Md. Rep.*, 61. That such a judgment is valid is conclusively settled by the cases in 5 *G. & J.*, 52; 2 *Gill*, 49; 5 *Gill*, 109. It merged the bond. 2 *Md. Rep.*, 457. A *fiat* has all the attributes of an original judgment. 7 *G. & J.*, 355. This judgment is an admission of the plaintiff's right to the penalty of the bond, and the release is only for the benefit of the defendant. 2 *H. & J.*, 41. Though the award was made after the death of the parties this judgment is still valid.

But the defendants are bound to the admissibility of the evidence by their omission to except. Proof taken without oath must be excepted to. 7 *G. & J.*, 494. So with hearsay evidence. 9 *G. & J.*, 342. The legal sufficiency of the evidence must be excepted to. 7 *G. & J.*, 138, 148, 191. 8 *G. & J.*, 136.

*Thomas S. Alexander* for the appellants, in reply.

The insufficiency of the personal estate is not admitted by Louis Mackall, who was an infant, and the appellants must prove this before they can recover. But suppose there is a deficiency of personalty, the claim is not proved as against the realty. The judgment could not on any principle cover the last instalment, which was not payable before the 14th of September 1833, the claim for that is therefore barred by limitations. They have not issued *sci. fas.* for the instalments as they fell due. 1 *Saunder's Rep.*, 57. Execution could not have issued on the judgment until the referees made their award, which was necessary to give it efficacy. 5 *G. & J.*, 52. The award was not made until after the death of Mackall, and the death of either party revokes the reference as it

would any other agency. This was not a reference under the act of 1778, ch. 21, sec. 8. See 2 *Gill*, 49, and 2 *G. & J.*, 475. The second referees could only have rendered such an award as Baden could have rendered, which was for the first instalment. They have therefore exceeded their power. We have the right to go into the elements of the accounts which make up the judgment in this case, for it is not collaterally in question, but is presented as evidence of the claim. 2 *G. & J.*, 458, and 5 *H. & J.*, 372, *Jones vs. Slubey.* The referees were bound to give notice to the parties, (7 *Gill*, 488,) which they have not done.

The judgment was not properly authenticated. A short copy is not evidence if excepted to. 7 *G. & J.*, 138. 2 *H. & G.*, 443. The exceptions were that the claim was not proved, and full proof required, and that it was barred by limitations. On objection to testimony the question before this court is its admissibility, the reasons assigned are not material. 12 *G. & J.*, 34, 35, 380.

LE GRAND, C. J., delivered the opinion of this court.

The appellants, on the 28th day of May 1847, filed their bill in the court of chancery against Anne R. G. Mackall and Louis Mackall, Jr., alleging, that they and the defendants in that proceeding were the heirs at law of Thomas Mackall, deceased, and as such, seized of real estate lying in Calvert county. They aver it to be incapable of beneficial division amongst the parties, and pray a decree for its sale, and that the proceeds may be distributed according to the rights of parties. Before the answers were filed, or decree passed, Edward Reynolds and others, as executors of Joseph W. Reynolds, on the 10th July 1847, filed their bill against the heirs at law of Thomas Mackall, praying a sale, for the payment of his debts, of the real estate of which he died seized. These suits were, on the 15th day of May 1848, by agreement consolidated, but without prejudice to the right of the heirs at law, to rely on any defences they might have against the claim of Reynolds' executors. It is the claim of Edward

Reynolds and others, as executors of Joseph W. Reynolds, which is now before us for adjudication.

The bill of Reynolds shows that the claim originated in the following manner: On the 14th day of September 1830, Joseph W. Reynolds, as trustee of John G. Mackall, deceased, sold a part of his real estate to Thomas Mackall for the sum of $3832,32, payable with interest in instalments, and took from him his bond, with security, for the payment thereof, in three equal instalments. At May term 1833 of Calvert county court, Reynolds recovered judgment against Mackall and his surety for the sum of six thousand dollars, to be released on the payment of such sum as Mr. Baden should fix.

At May term 1844—Joseph W. Reynolds having previously died—the judgment was revived in favor of his executors against Thomas Mackall, who had survived his security. The bill also avers, that Thomas Mackall having died, letters of administration were granted to Anne R. G. Mackall, and that his personal estate is insufficient to pay his debts. This bill was answered on the 28th of December 1847, by Young and wife, and Anne R. G. Mackall. Louis Mackall, Jr., being under twenty-one years of age, by his answer puts the complainants to proof of their claim. The defendants admit the sale, as alleged to have been made by Joseph W. Reynolds, as trustee, and the giving of the bond by Thomas Mackall. They also admit the recovery of the judgment and the revivor of it, but say it was to be released on the payment of such sum as one Jeremiah Baden should ascertain to be due, and that the original judgment was so entered; and also that the *fiat* was entered subject to such credits as counsel should ascertain. They also claim the benefit of certain credits, and deny the right of the executors of Joseph W. Reynolds to receive the balance, if any be due on the bond, as it is not averred the latter had paid or satisfied the persons entitled to the proceeds of sale of the estate of John G. Mackall.

The proceedings in the cause show, that at May term 1833, Joseph W. Reynolds obtained a judgment in Calvert county

court against Thomas Mackall, to be released on the payment of such sum as should be ascertained by J. M. Baden. The amount was never fixed by him. A *scire facias* was issued on the judgment, and at May term 1844, the *executors* of Joseph W. Reynolds obtained a *fiat*, to be released on the payment of such sum as Alexander Randall and J. Dalrymple should ascertain. This was not done until 1849, and Thomas Mackall died in the year 1846.

There can be no doubt that the original judgment merged the bond, nor that it was final. *Bank of United States vs. Merchants Bank*, 7 *Gill*, 416. *Turner vs. Plowden*, 5 *Gill and Johns.*, 52. But, although the judgment was final, it was not effective, nor could it be so, until the amount was ascertained, and this was not done and entered of record until after the death of Thomas Mackall. This was clearly irregular, for even were it conceded the death of Mackall did not revoke the authority of the referees, still there is not only no evidence in the record that Mackall was ever invited to attend on their consultations, and exhibit the proofs of any credits to which he might be entitled; but it is manifest from all the circumstances attending the ascertainment of the amount due that Mackall was dead at the time. It is a well established principle, both at law and in equity, that where persons to whom the parties have agreed to refer matters in dispute have consented to undertake the office, they ought to appoint a time and place for examining the matters, and give notice of such appointment to the parties, or their attorneys. *Kyd on Awards*, 95. And it is said in *Rigden vs. Martin*, 6 *Har. and Johns.*, 406, "that the parties ought to have notice of the time of meeting, is a position so strongly supported by common justice, that it would seem not to require the aid of authorities." The same doctrine is fully recognised in *Emory, et al., vs. Owings*, 7 *Gill*, 488.

This being so, the question is presented whether this ascertainment of the referees can be enquired into in this proceeding? We think it can. Had Mackall been living when the award was made, it would have been set aside on his motion

by the county court, because of irregularity arising out of the failure to give him notice. The award and entry seem to have been made without notice to any one who was to be prejudiced by it. There can be no doubt that a court of equity would have enjoined the execution of such a judgment, and would have regarded the act of the referees under the circumstances as invalid and of no effect. It is not like the case of a judgment which concludes the parties and which cannot be collaterally inquired into. It is in the predicament of one which has been obtained because certain equities, cognizable in a court of equity, could not be availed of in a court of law. In all such cases a court of equity will enjoin the execution of the judgment at law until right and justice be done between the parties. In the case of *Jones vs. Slubey*, 5 *Har. and Johns.*, 372, the court of chancery and the Court of Appeals authorised a defendant to go behind a judgment obtained at law against him, and to enter into an examination of the accounts between him and the judgment creditor, it not being in his power to do so in the suit at law in which the judgment was obtained against him. In that case the complainant had previously obtained a judgment at law on a bond of the defendant, who in his answer alleged that the bond had been given for a larger amount than was actually due. He admitted that the suit was instituted on the bond and judgment obtained against him, he being informed he could make no defence at law, and averred that he ought to have been credited with $2298.76, and that judgment should only have been entered for the balance. *He did not pretend he had paid anything on the bond after it had been executed;* his allegation was, that it had been given for too large an amount. The chancellor, in his opinion, said the amount due would be a subject for the consideration of the auditor, and the Court of Appeals, in alluding to this branch of the case, say, "as to the objection, that the judgment obtained at law by the complainant is for more than is actually due, and that the chancellor ought to have made the proper allowance, &c., it will be seen, on reference to the record, that by the decree the proceeds of the

sale of the property are directed to be brought into the court of chancery, to be applied under the directions of the chancellor; and the chancellor, in his opinion, says, that the amount due will be a subject for the report of the auditor, when all credits to which the defendant, Nicholas S. Jones may be entitled, will be allowed him." The bond was dated 12th May 1809, and the judgment was obtained in 1812. We have examined the original papers in the case, and find that when the case was proceeded in by the court of chancery, after the decision by the Court of Appeals, that the chancellor referred the whole accounts to the auditor, who stated an account *commencing in* 1806, three years before the date of the bond, and six before that of the judgment. And this was done manifestly on the ground that the defendant could only avail himself of his defences in equity, and we regard this case as liable to the application of the same principle. The amount was ascertained not only without notice to Thomas Mackall, but several years after his death, without notice to any of his representatives or heirs. We regard the act of the arbitrators to be just as much a nullity as if done during the life of Mackall, and we have shown it would have been so regarded. It was not a reference under any act of Assembly, but merely in pursuance of an agreement between the parties.

When the judgment was *revived* against Thomas Mackall all the instalments were due, although such was not the case when the original judgment was obtained; and although where there is a failure to pay an instalment when due, the whole bond is forfeited and the judgment is for the penalty of the bond, yet, under the statute of 8 *and* 9 *William*, *ch.* 3, where all the instalments are not due when the judgment is obtained, the plaintiff must have a *scire facias* to recover future instalments. The judgment remains as a security to answer such damages as shall be sustained by a further breach of the covenant or writing, and the plaintiff may have a *scire facias* upon the judgment, suggesting other breaches of the covenant or writing. 1 *Wms. Saunders*, 72. According to this, when the judgment was originally obtained, the plaintiff would have

been compelled to assign his breaches, which would have been the non-payment of the instalments then due. He could only have had execution for what was due, and hold the judgment as security against further breaches which he would have been compelled to set out in his *scire facias*. But this cannot be of any effect now on this case. Mr. Baden never ascertained the amount due, and when the original judgment was *revived* all the instalments were due. We therefore regard the judgment as valid, but the ascertainment of the amount due as not binding on the heirs of Thomas Mackall, and the indebtedness on the judgment as a proper subject of inquiry of the court of equity, and we shall accordingly remand the cause for that purpose.

It is true the answers of the adult defendants admit the insufficiency of personal assets to pay the debts of the deceased, but this does not dispense with the necessity on the part of the creditor to show that he has applied those assets as far as they will go; and by the proceedings in this cause it appears that Nathaniel Duke, by his first account, as collector of Thomas Mackall, charges himself with $521.22¼. This must be accounted for before the realty can be called upon to make up this deficit. If the administrator has committed a *devastavit* his bond is liable. When this case is returned to the court of chancery, that court will examine into the matter and credit the realty for whatever amount of the personalty has been misapplied.

We remand the cause, that an account may be stated showing the amount due by the estate of Thomas Mackall, according to the principles which we have indicated.

> *Decree reversed and cause remanded*
> *under the Act of 1832, chap. 302.*