## The Western Female Seminary v. John M. Blair.

1. When a corporation has no corporate seal, and the board of trustees, authorized by law to transact the business of the corporation, resolved, at a stated meeting, to submit their controversy with the defendant to arbitration, and empowered their president to complete the proper arrangements, preparatory to the submission, an arbitration bond, made and signed in the name of the corporation, by the president with his private seal, in scrawl, attached, is valid against the corporation.
2. To authorize an award, in pursuance of a submission to arbitration, to be made a rule of court, under the statute of 1831, the bond must contain the names of the arbitrators.
3. After the submission, once duly made, it can not be revoked: though otherwise at common law.
4. If one of the arbitrators is biased, or interested, and the other party was ignorant of the fact, it is a disqualification which he may afterward insist on.
5. If the arbitrators misbehave, as by hearing testimony from one party in the absence and without the knowledge of the other, the award will be set aside.

SPECIAL TERM.—On motion to make an award a rule of court, and for judgment.

The facts are sufficiently stated in the decision.

*Woodruff & Hopkins* and *Tilden, Rairden & Curwen,* for the motion.

*Haines, Todd & Lytle* and *Coffin & Mitchell,* contra.

STORER, J. This is an application to make an award a rule of this court, under the act authorizing and regulating arbitrations, passed February 17, 1831.   Swan's Stat. 44.

The application is resisted on several grounds:

1. First: Because the plaintiff did not execute the bond required by section 2 of the statute authorizing the submission.

The bonds are dated on the same day, and are both executed by Blair and the plaintiff, the execution by the plaintiff being in the following words:

" For which payment, well and truly to be made, we bind the Western Female Seminary, a corporation as aforesaid, her successors and assigns, each and every of them. Sealed with our seals, and dated this 28th day of July, A. D. 1855." The previous portion of the bond commencing in these words: " Know all men by these presents, that the Western Female Seminary, a corporation under the general law of Ohio, situate at Oxford, Butler county, Ohio, are held and firmly bound unto John M. Blair, in the sum of five thousand dollars:" the condition of which was, to abide by and perform "the decision of Guernsey Y. Roots and John H. Coleman, and such third person as may be selected by them, who are chosen as arbitrators, as well by and on behalf of said John M. Blair as of the said Western Female Seminary," etc.

The signature is the " Western Female Seminary, by Daniel Tenney, President.                    [SEAL.]"

The two arbitrators named made selection of William B. Moores, and upon the hearing of the controversy an award was made and submitted in writing, under the hands and

seals of Roots and Moores, finding that Blair was indebted to the Seminary in the amount of $1,969.18.

It is admitted that the corporation had no common seal; and it is proved by the president that no private seal of any of the officers had been especially adopted. The board of trustees, however, who were authorized by law to transact the business of the corporation, had previously resolved, at a stated meeting, to submit their controversy with the defendant, to arbitration, and empowered their president to complete the proper arrangements preparatory to the submission.

There can be no doubt that the only mode by which a corporation could make a deed, at common law, was by the use of its common seal, or by the adoption of some private seal, if no common seal existed. This rule was formerly very strictly observed, even to the extreme of technicality, but has been greatly modified in later times. The weight of modern authority applies the same implication to the execution of such an instrument as the paper before us, as to a bond executed in due form. In both cases, the execution will be held to be valid, *prima facie*, and obligatory on the parties intended to be bound. To avoid it, a want of authority on the part of the agent to sign the instrument, or to use his private seal, should be proved; and certainly, under our practice, the obligor of any bond, as well as the maker of every note, whether an individual or a corporate body, is compelled to deny under oath, the execution of the instrument, before the plaintiff is required to prove it.

When the common seal of a corporation is affixed to an instrument, it is an established rule that it will be presumed the officers did not exceed their authority, and the seal itself is evidence that it was properly affixed. The contrary must be shown by the objecting party. Angel & Ames on Corp. 115; 6 Paige, 60, *Lovett* v. *The Steam Saw Mill Association;* 12 Wheat. 70, *Bank U. S.* v. *Dandridge;* 8 Pick. 56, *New England Mar. Ins. Co.* v. *De Wolf;* 21 Pick. 428, *Mill Dam Foundry* v. *Hovey;* 12 N. H. 434, *Flint* v. *Clinton Co.*, etc.

The purpose for the courts to accomplish, whenever the validity of contracts is questioned, is to ascertain what the parties intended to do; and where the assent of both may fairly be presumed, they will be held bound by their admissions, either express or implied. In the present case, the corporation does not deny its liability nor impute any defect in the mode of executing the bond by the president.

The plaintiff has asked us to make the award a rule of court, and thus admitted the liability. If they should have disputed it, they would have been estopped. Beyond this, both parties have proceeded under the submission on the faith that they were mutually bound. Neither claimed that the bond required by law had not been properly executed, during the progress of the arbitration, and never until this motion was made.

We must regard, therefore, the several obligors to have admitted their liability and given their full assent to the bond, if the execution had been originally defective. We can not permit either, in this stage of the case, to deny their liability. They must be estopped.

If a judgment should be rendered upon a bond defectively executed, when all parties had their day in court, and permitted the case to be decided on the merits without excepting to the mode in which the bond was executed, there certainly could be no cause of complaint; and the award made in this case must, for all practical purposes, produce the same result.

We hold, then, that the first objection made by the defendant must be overruled.

2. The second objection taken is, that the bond does not contain the names of the arbitrators, as required by section 2 of the statute.

The language of the section is: "The parties to such submission may enter into arbitration bonds, which bonds shall be conditioned for the faithful performance of the award, or umpirage, setting forth the name or names of the arbitrators or umpire, and the matter or matters submitted

to his or their determination; and when such is the agreement, that such submission be made a rule of any court of record within this State, or a rule of any particular court of record named in the submission."

The question now arises, does the bond conform to the statute in the substantive provisions?

At common law, it was the right of any person to submit his claims to the arbitrament of others, and the agreement to submit would bind all the parties, whether in writing or by parol merely. Awards made pursuant to such submissions were regarded by the courts with great favor, as they tended to quiet litigation, and were determined by the tribunal elected by the parties themselves. Where the remedy to enforce the award is not in the usual mode, by action, but is sought through the intervention of the statute which gives a summary process, by attachment, to compel the performance of the award, it is but the application of the ordinary rule by which the jurisdiction of courts is regulated, to require that all the requisites of the statute authorizing the submission shall have been substantially fulfilled.

Thus, under the statute of 9th and 10th William III, ch. 15, which permits awards to be made a rule of court, it has been held "that no parol submission is within the statute." 7 D. & E. 1, *Ansell* v. *Evans.* So the bond must express that the award shall be made a rule of court, or it will not be allowed to be; Str. 1178, *Harrison* v. *Grundy;* and where the submission is not clearly within the statute, the parties will be left to their action; 3 Neville & Manning, 860, *in re Lee, et al.*

The statute authorizing submission in Massachusetts, required that the same should be made to three arbitrators, and where a submission was made to two only, it was held by the court, 4 Mass. 532, *Monosiet* v. *Post, et al.*, that "this error was fatal. The statute must be strictly pursued. Where the parties leave the common law for these peculiar remedies, they can not expect the court to show them particular favor."

In Illinois the same rule is adopted, and the same reasoning is used to sustain it. 15 Ill. 373, *Low, et al.* v. *Nolte.*

In our own State, the practice, so far as our knowledge extends, has been uniform in requiring the submission to conform to the statute in every essential particular. This is recognized by the Supreme Court in 3 Ohio, 286, *Strum* v. *Cunningham.*

The conformity of the submission to the statute is held to confer jurisdiction upon the court to act upon the award; and as section 10 of the statute gives power to the court to punish for disobedience of the award, " as for a contempt of court, either by attachment, sequestration, or execution, as the nature of the case may require," it must be considered in the character of a penal law, which can never impart jurisdiction, except its terms are substantially complied with.

The statute requires, in express language, that the names of the arbitrators or umpire shall be inserted in the bonds. Here, all the persons to whom the controversy was to be submitted, are called arbitrators, and there is no power given, by law, to dispense with the name of either; there is, also, no power by which those who are named may select or appoint another, at their discretion. This view is strengthened by the fact that the award, when made, must be the act of the majority of the arbitrators, and as they must be named in the bond, there could have been no compliance in this case, as but one of those named united in the award.

We think that the submission is not in conformity with the statute, and the award said to have been made under it, for the same reason, is equally defective.

3. The third objection taken by the defendant is, that the submission was revoked before the award was made.

It is in proof that the defendant did revoke, in due form, the submission, before the award was finally made up, and before it was signed or delivered to the parties; and if this proceeding was at common law, or in the ordinary course

of judicial action, the objection, we should hold, was fatal; as the whole current of authority as well as the received practice, are in harmony with the principle thus asserted; but the Supreme Court of Ohio, in 19 Ohio, 264, *Carey* v. *Commissioners of Montgomery Co.*, and 1 Ohio St. 463, have decided that submissions under the statute regulating arbitrations can not be revoked. They make a distinction between common law arbitrations and those permitted by the statutes. Whether we should have held the same distinction, if the question was an open one, it is not necessary to state; sufficient is it that the decision has been made, and we regard it as obligatory upon us until it has been re-examined and denied to be authority.

4. The fourth objection is, that the award was obtained by undue means, inasmuch as one of the arbitrators, chosen by the plaintiff, was interested in the case, having examined the matter in dispute, and expressed his opinion thereon, before the submission was made, of which the defendant had no knowledge until after the award was made.

It is in proof that G. Y. Roots, the arbitrator selected by the plaintiff, was, at the time, one of the trustees of the corporation, and had, at a stated meeting of the board, as it appears by their minutes, been present when the subject in controversy was examined and discussed, and then voted with his colleagues that no more money should be paid to the defendant, until the claim of the plaintiff for damages was adjusted; and, at the same time, voted to refer the matter in dispute to arbitration.

These facts were not known to the defendant until the application was made to make the award a rule of this court: although there is some evidence that he knew that the arbitrator was one of the trustees; it is very clear the other facts had not been disclosed.

On the ground of interest merely, we suppose, there was no objection to the competency of the arbitrators, as the interest of a mere trustee was so remote that it could not legally affect him. This is the ruling of Lord Chancellor Cranworth

in the late case, 33 E. L. and Eq. 12, *Drew* v. *Drew*, and seems to us to be both reasonable and just.

But, if there is no pecuniary interest, there may, nevertheless, be a bias or prejudged opinion, on the part of an arbitrator, that would have excluded him, if known at the time of the submission, and which may well affect the award itself.

We are informed by Mr. Kyd, in his work on Awards, page 71, "that the Roman law expressly provided that if a man be constituted arbitrator, in a dispute to which he himself is a party, he can not pronounce an award, adding this satisfactory reason, that he must, from the nature of the thing, either order himself to do something, or prohibit himself from asserting some claim; and that no man can either impose a command or a prohibition upon himself."

If, however, with a full knowledge of the interest of the arbitrator, the parties consent to submit to him their disputes, they are precluded; as in 4 Mod. 226, *Matthew* v. *Ollerton*, where Dolben, J., said "he remembered a case where Sergeant Hards took a horse from my Lord of Canterbury's bailiff for a deodand, and the archbishop brought his action; and it coming to a trial at the Kent Assizes, the sergeant, by rule of court, referred it to the archbishop to set the price of the horse, which was done accordingly, and the sergeant afterward moved the court to set aside the award, for that the matter in difference was referred to the plaintiff himself, but it was denied by Lord Hale, *et per totam curiam.*" See, also, Hardre, 43, 44, *Hunter* v. *Barwise.* Where there is such an interest as would exclude the person named as arbitrator, if he was challenged as a juror, and it is not known when the agreement is made to submit, it can not be said the tribunal selected by the parties is composed of impartial judges.

Thus, in 2 Vernon, 251, *Earl* v. *Stocker*, an award was set aside, for that, "it appearing the arbitrator had an interest in the cargo of a vessel, touching which the award was made, and, therefore, put too great a value thereon."

Lord Thurlow, in 1 Vesey, Jr., 226, *Calcraft* v. *Roebuck*, says: "It is not uncommon for a person appointed arbitrator to consider himself as agent for the person appointing him. How that is so common, I wonder, as it is against good faith. The bond says he is an indifferent person, and he breaks a most solemn engagement in considering himself otherwise;" and, if we apply the spirit of the Chancellor's remarks to a case where the arbitrator is the agent in fact of one of the parties, as he is a member of their body corporate, and has expressed his opinion upon the matter in dispute before it was submitted to him, we are pressed with its pertinence, as well as its justice.

The principle thus indicated is admitted in 33 E. L. and Eq. (already quoted), and expressly held in 26 Maine, 254, *Brown* v. *Leavitt*, where it is decided that an award would be set aside if the defendant was ignorant, at the time of the submission, as well as of the award, that one of the arbitrators was a relative of the plaintiff. See, also, 10 Pickering, 277, *Fox* v. *Hazelton*, where Judge Shaw, in giving the opinion of the court, says:

"The ground of objection to the acceptance of the report was the partiality of one of the referees at and before the hearing, which seems to have been sufficiently proved by the evidence stated in the exceptions. *   *   *

"It is impossible for the other referees to determine to what extent their own judgments reposed upon the reasonings and suggestions of this individual, or how far their decisions were influenced by his. If parties really intend to have their rights decided by impartial judges, they are entitled to insist that all shall be impartial."

See, also, 9 Cushing, 570, 571, *Strong* v. *Strong*, where it is said: "Although an arbitrator has only special, and often very limited and narrow duties, and is not assumed to possess all the general conditions of a judge, and is not under oath like a juror, yet the analogy of his duties remains the same as if he were appointed by the highest public authority, or sworn to impartiality of judgment."

Arbitrators are said to be not only the judges, but the jurors, of the parties' own selection, chosen, as it is supposed, for their disinterestedness, their intelligence, and moral fitness. Whatever, then, may be regarded as a good ground of objection to a juror, ought to obtain when urged against an arbitrator. As to jurors, the disqualification at common law has been embodied in section 14 of the act of 1831; Swan, 489. It embraces those "who have been arbitrators on either side, relating to the same controversy; or who have an interest in the cause; or who have formerly been jurors in the same cause; or who are the party's master, servant, counsellor, steward, or attorney; or who are subpenaed as witnesses; or who are akin to either party." All these are grounds of challenge, and, if found true, the juror is rejected.

In addition to these special exceptions, there is another of very general application: It is the question proposed to every juror before he is sworn, whether he has formed or expressed an opinion upon the matter in controversy, and his answer determines his fitness to serve on the panel. In such a case, when the cause of challenge is not known to the party interested until after the verdict, a new trial will be granted.

5. Another objection is made, which involves directly the conduct of the arbitrators, and is urged upon our attention as included within the terms of section 11 of the statute, which authorizes the court to set aside the award, if the same is obtained by fraud, corruption, or other undue means, or where the arbitrators or umpire have misbehaved.

It is proved by the arbitrators, as well as by the president of the corporation, that the parties to the submission were informed at Oxford, where the arbitrators met, that no new evidence would be admitted; that the arbitrators then adjourned to Cincinnati to make up their award, and, while there, permitted the plaintiff to introduce testimony material to the controversy, which was heard and acted on, in the absence, and without the knowledge, of the defendant; that a large item allowed by the arbitrators against the defendant

was thus proved without any notice to him that it would be claimed by the plaintiff, and without any opportunity afforded him to cross-examine the witnesses.

The rule by which arbitrators should be governed on hearing testimony, is that which controls judicial tribunals in the trials of ordinary cases. When the testimony is once closed, neither party, in the absence of the other, or without the consent of the other, is permitted to be heard anew. A principle so sound, as well as salutary, in the administration of justice, must be of universal application, and extend equally to all courts, whether organized by the law or created by the parties.

Thus, in 6 Vesey, Jr., 72, *Walker* v. *Frobisher*, Lord Eldon held that an award should be set aside, the arbitrator having heard evidence, after notice to the parties that he would receive no more; and, although the arbitrator swore that the testimony had no effect upon his award, the Lord Chancellor said: "I believe him; he is a most respectable man; but I can not, from respect for any man, do that which I can not reconcile to general principles. A judge must not take upon himself to say, whether evidence, improperly admitted, had, or had not, an effect upon his mind. The award may have done perfect justice, but, upon general principles, it can not be supported."

So, in 9 Vesey, Jr., 68, *Fetherstone* v. *Cooper*, it was held: "Arbitrators must understand that they are acting corruptly where they take instructions, or talk with one party in the absence of the other. There ought to be the fullest communication."

The same point is very clearly stated in 2 Vernon, 514, *Burton* v. *Knight*, where the arbitrators held a private meeting, and admitted one party to be heard without notifying the other.

In 8 Taunton, 694, *in re Hick, et al.*, where an arbitrator questioned a witness, and received a statement from him, in the absence of the other party, the award was set aside. The same ruling is to be found in 6 Adol. & Ellis N. S. 637,

*Dobson, et al.* v. *Groves, et al.*   In Ib. 852, *in re Plews, et al.*, Coleridge, J., said : " To uphold the award would be to authorize a proceeding contrary to the first principles of justice. The arbitrators here carried on their examinations apart from each other, and from the parties to the reference; whereas, it ought to have been conducted by the arbitrators and umpire jointly, in presence of the parties."

The Supreme Court of Pennsylvania have followed the same doctrine in 1 Dallas, 83, *Hagner* v. *Musgrove;* 1 Ib. 187, *Chaplin* v. *Kirwan;* 4 Ib. 232, *Falconer* v. *Montgomery;* 4 Ib. 272, *Passmore* v. *Pettit, et al.*   See, also, the principle indicated by Chief Justice Spencer, in 17 John. 410, *Van Cortlandt* v. *Underhill.*   See, also, 7 Gill, 497, *Emery, et al.* v. *Owings;* 9 Cushing, 572, already quoted.

The cases we have referred to fully sustain the conclusion to which we have arrived, after a careful examination of the testimony before us, that the conduct of the arbitrators was such as must vitiate the award now asked to be made a rule of the court.

We should have no hesitation in setting aside a verdict where a court or jury had thus imprudently acted, and we ought not to make any distinction between such a case and that now before us.

With these views of the relative rights of the parties, and the duties of the arbitrators, we must hold the award inoperative and void, and as directed, in such cases, by section 11 of the statute, we must order it to be set aside.   If the defect was merely to the form of the bond, or the submission, so that we were only precluded from permitting the award to be made a rule of court, we should certainly leave the parties to their remedy at common law; but the questions made by the defendant reach the legal existence of the award, as a finding by the judges of the parties' own selection; they involve the impartiality and justice of their proceedings; and if we find they have neglected a necessary duty, misbehaved, or done anything officially that has deprived either party of a full and fair opportunity to assert their claims—more

especially if there was a member of the arbitration who was not indifferent between the parties, but who had acted against the claim of one of them, or denied that it was valid—the only course we can properly pursue is to vacate the award, and remit the parties to their ordinary remedy.

This, we are satisfied, is but the manifest requisition of the statute, and is fully sustained by the opinion of Baron Parke, in the late case, 29 E. L. and Eq. 506, *Hinton* v. *Mead.* "This award," said he, "is clearly void altogether, for where three arbitrators are appointed, all three are to exercise their judgment on the matters referred, and if two take upon themselves to act without the third, their award is a nullity."

We refuse to make the award a rule of this court, and order an entry to be made on the record that it is set aside, and held for naught.

Motion overruled.