## JONATHAN SHAFER *vs.* HENRY SHAFER.

A judgment was rendered in March 1847 for such sum as the clerk should ascertain to be due; in August of the same year, the clerk filed an award that a certain sum was then due, under an agreement with the plaintiff's counsel that further credits should be allowed if the defendant should thereafter show any. On this judgment a *fi. fa.* was issued in March 1848, and in May of the same year, the parties entered into another reference to arbitrators, with power to appoint an umpire. HELD :

1st. That the second submission was designed to take the place of the first, and that the power of the clerk over the judgment, as to ascertaining credits, ceased from the time the second reference was made, and a *second* award of the *clerk,* made after that time, was void.

2nd. The fact that the second submission failed by reason of the loss of the papers and award, did not give the plaintiff the right to enforce his *fi. fa.,* the defendant not being alone in default.

3rd. The defendant could avail himself of these equities by motion against the *fi. fa.,* or to have the credits entered according to the submission and award, and until the controversy as to these credits was ended, the plaintiff was not entitled to further process.

APPEAL from the Circuit Court for Washington county.

A judgment was entered, in an action of *assumpsit* by the appellant against the appellee, in Washington county court, on the 20th of March 1847, in favor of the plaintiff, "to be released on payment of such sum as Isaac Nesbitt shall ascertain to be due." Afterwards, on the 31st of August 1847, said Nesbitt, the clerk of said court, filed an award under his hand and seal, in which he states, that "having carefully examined the papers filed up to the present date, finds to be due from the defendant to the plaintiff, the sum of $946.26, with interest thereon, from the 25th of March 1847, till paid, with costs of suit." To this award was annexed the memorandum of an agreement between the plaintiff's attorney and Nesbitt, as follows: "*Note.*—The counsel for the plaintiff agrees, if the defendant shall hereafter show any further credits to which he would be legally entitled, the same shall be allowed him."

Afterwards, on the 20th of March 1848, a *fi. fa.* was issued on this judgment, and time given to the sheriff to make his

return till the 4th Monday of March 1851.    In the meantime, on the 31st of December 1850, Nesbitt filed an additional award, and directed the sheriff to credit on the *fi. fa.* the sum of $323.10.    This credit the sheriff gave, and then made the balance due on the execution and paid it over to the plaintiff's counsel, and returned the writ accordingly.

At November term 1851, the plaintiff moved to quash this return and remand the *fi. fa.*, to levy the amount due on the judgment or to direct an *alias fi. fa.* to issue, for reasons in substance as follows:

1st. Because the sheriff had not levied the whole amount of the judgment, $946.26, as directed by the writ.

2nd. Because he had no right to allow any credit not endorsed upon the writ, upon the private instruction of the clerk of the court.

3rd. Because the clerk had no power over the *fi. fa.* after it had gone into the hands of the sheriff, and therefore his direction to the sheriff of the 31st of December 1850, was wholly unofficial and unauthorised.

4th. Because the defendant had ample time to produce his credits before the *fi. fa.* issued, and because the writ was opened for the second award two years and nine months after it went into the sheriff's hands, which is unreasonable and not to be indulged.

5th. Because these proceedings were against the remonstrance of the plaintiff; because credits were allowed for stale and illegitimate demands which could not have been recovered at law, and no notice was given the plaintiff or opportunity offered him to defend himself against said credits; and because one of these credits had been previously allowed, and another could have been affected by other demands the plaintiff then, and now, holds against the defendant.

Afterwards, on the 23rd of December 1852, the plaintiff moved the court for a rule upon the defendant to show cause why the second award of the clerk should not be set aside, which was accordingly laid by the court.    In answer to this motion and rule, the defendant assigned reasons, in substance as follows:

1st. Because at the time Nesbitt made his first award, it was done with an express reservation of power on his part, with the agreement and consent of the plaintiff's counsel that it might be opened for further credits, and therefore said award not being final was in fact no award.

2nd. Because if said award can be considered as good *pro tanto*, yet there was express consent that Nesbitt should allow such further credits as might be made to appear without any limitation as to time.

3rd. The delay in producing said credits is accounted for by the affidavit of George Shafer, herewith filed, which shows they were filed as early as they could be found, and within a reasonable . time after the order was given to the sheriff to proceed to execute the *fi. fa.*

4th. Because no credits were allowed twice, and *none received by the referee except such as were legitimate and proper.*

Various affidavits were filed by each side in support of the motion and rule, and in opposition thereto, the purport of which is sufficiently stated in the opinion of this court. The court below (PERRY, J.,) discharged the rule and gave judgment in favor of the defendant for costs. From this judgment the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Jervis Spencer* for the appellant, argued:

1st. That the judgment in this case, though for such a sum as the clerk should ascertain to be due, was still a *final* and *valid* judgment, like that in the case of *Turner vs. Plowden*, 5 *G. & J.*, 52.

2nd. The clerk, after he had ascertained the sum due by his *first* award, and the *fi. fa.* had been issued, had no power to suspend the operation of the writ, or to interfere with it in any way in the hands of the sheriff. 14 *Pick.*, 442, *Oakes vs. Hill.* 9 *Ala.*, 244., *Haynes vs. Wheat.*

The mere statement of such a case is sufficient; the writ is the act of the court, it is the court's command to the sheriff; that officer is bound to execute the *whole writ*, and the court will not accept an insufficient return. 1 *Arch. Pr.*, 297. *Sewell on Sheriffs*, 386 to 397. 4 *Barn. & Ald.*, 695, *Jackson vs. Davison.* 3 *Comyn's Digest, title, Execution H.* 2 *Tidd's Pr.*, 94. After the clerk had made his first award he had no further power over the case. *Russell on Arbitrators*, 134. *Watson on Awards*, 137, 117, 293, 294. We say therefore the writ should be remanded to the sheriff, there being no sufficient return, or if not remanded, an *alias fi. fa.* should issue.

*Geo. Schley* and *J. Dixon Roman* for the appellee, argued:

1st. That the clerk had the authority to direct the *fi. fa.* to be credited with the further allowances, either as arbitrator or under the agreement and consent of the plaintiff himself. The reference to the arbitrators in May 1848, suspended the judgment for the time as well as Nesbitt's authority, but this submission was abrogated and annulled by the plaintiff himself, by resorting to the execution before the award was made, and this proceeding on his part *restored* the authority of Nesbitt. The plaintiff cannot object to the second award, because the consideration upon which the *first* award was made was, that further credits should be allowed, and having reaped the fruits of that first award he cannot now object to our part of the agreement. That the referee in this case is to be treated as an arbitrator, is clear from the cases of *The State, use of Welch, vs. Jones*, 2 *Gill*, 49; 5 *Do.*, 118, *Clark vs. Digges; 4 Md. Rep.*, 375, *Young & wife, vs. Reynolds.* Our position then, in brief, is:—1st, that the award of the referee was made either with a reservation of power to make further and additional awards, or 2nd, under the agreement and with the consent of the attorney for the appellant, that credits should be allowed as they were made to appear. If the *former*, the first award was void, not being *final*, (*Russell on Arb.*, 228, 445; *Watson on Awards*, 104, 105, 230; 2 *H.*

66       v.6

& G., 70, *Archer vs. Williamson;* 4 *Md. Ch. Dec.,* 199, *Carter vs. Calvert,*) and the issue of the *fi. fa.* was therefore premature and illegal, because the amount of the judgment *was not ascertained.* If the *latter,* the appellant cannot now urge the result of his own act as a reason why this court should assist him in repudiating his agreement, voluntarily entered into with full knowledge.

TUCK, J., delivered the opinion of this court.

It is manifest from this record, that the award filed by the referee, on the 31st of August 1847, was not considered by the parties as a final ascertainment of the credits claimed by the defendant. That award was made at the request of the plaintiff's attorney, he agreeing at the time, that if the defendant should thereafter show any further credits to which he was legally entitled, they should be allowed him. The *fi. fa.* was issued on the 20th of March 1848, and on the 8th of May 1848, while that writ was in the sheriff's hands, the parties are found entering into another reference to Messrs. Schley and Spencer, with power to appoint an umpire. There can be no mistake as to the object of this last reference. It appears that there had been transactions between the parties of long standing and large amounts, out of which, as George Shaffer states, arose the cause of action on which the judgment was entered. In a spirit of fairness and with a view to a full and final settlement, they agreed to this last submission. Mr. Spencer's affidavit shows, that after Nesbitt's first award, "the defendant, by his son and agent, George Shaffer, made repeated efforts to establish a demand of Henry Shaffer against Jonathan Shaffer, by virtue of an old partnership, of which Jonathan and Henry were members, in order to obtain a cross-demand against Jonathan, with a view to offset the same against this judgment, and, *to that end,* had submitted the partnership affairs to their attorneys, who, not being able to agree, appointed an umpire. He also states, that he considered the matter of credits on the judgment out of Nesbitt's hands, "both on account of the great length of time and the substitution of other referees." He goes on to show, that the

joint account was gone into by the referees and umpire, and an award made in June 1851, which had been lost. George Shaffer states, that "subsequent to the judgment, the parties agreed to submit all matters in dispute between them, out of which said claim or judgment arose, to the arbitration and decision of the counsel, with power to choose an umpire, with the distinct agreement and understanding, that the judgment should repose until the decision of the arbitrators was made. That if they decided that any sum of money was due from Henry to Jonathan, the judgment should stand as security for such sum; and if the amount ascertained to be due from Henry to Jonathan should be less than the whole amount of the judgment, then the judgment should be rendered accordingly."

It is clear, that the second submission was designed to take the place of the first, and that Nesbitt's power over the judgment, as to ascertaining credits, ceased from May 1848, when, as appears by the statement of Judge Weisel, filed with Mr. Spencer's affidavit, the agreement for the second reference was made. It is, therefore, unnecessary to decide what was the effect of the agreement made by Mr. Spencer, when the first award was filed as a reservation of power to Nesbitt to make a second award. But, because of the second submission, we are of opinion, that his last award was void and should have been set aside by the court.

We are next to inquire, what was the effect of this submission upon the judgment and outstanding *fi. fa.* If, as was said in argument, this reference has failed by reason of the loss of the papers and of the award that was made out, it does not follow that the plaintiff is authorised to enforce his execution. The award was filed by Nesbitt under, and only because of, an agreement of the plaintiff's counsel that further credits might be ascertained. After this another agreement was made; and, because this has not been carried into effect, shall the consequences be visited on the defendant alone when he does not appear to have been altogether in fault? We have no doubt that a court of equity would have interfered to prevent such an unjust proceeding. 2 *Story's Eq.*, secs. 880, 885. Hardship may have resulted from the delay, but the fault, if any,

does not rest more on the defendant than on the plaintiff. His counsel was one of the referees, and had the same means, and was under the like obligation, to hasten a termination of the controversy. It appears to have been a complicated and troublesome dispute which the parties and their counsel were endeavoring to settle in an amicable manner. These efforts having failed, the parties resorted to what they deemed their legal remedies in the premises, though, as we think, on both sides, contrary to the agreement into which they had entered; the one in obtaining a second award from Nesbitt, and the other in enforcing the *fi. fa.* before the credits were ascertained.

The defendant might, by motion against the *fi. fa.* or to have credits entered according to the submission and award, have availed himself of the equities growing out of these acts of the parties, upon the principles adjudged in *Job vs. Walker,* 3 *Md. Rep.,* 129. The motion by the appellant to quash the sheriff's return, and to reject the credits allowed by the second award, and order other process, and the rule to show cause, necessarily had the effect of bringing the whole matter before the court to be determined according to the agreement of the parties, because if credits had not been entered pursuant to the last award, supposing it not to have been lost, or if that reference had not been determined, the rule must have been discharged. And if, on the hearing, it appeared that for any cause the referees could not return an award, the court should have gone into an examination of demands between the parties in order to have ascertained the true state of their accounts, that proper credits might have been entered on the judgment. In this way, we think, justice might have been effected without resorting to the equity side of the court; and until this controversy, as to credits, was ended, the plaintiff was not entitled to further process.

There is no question before us on the validity of the first award, the motion and proceedings having reference only to the second and the sheriff's return to the *fi. fa.* We therefore intimate no opinion as to the power of the referee to file a partial award under the circumstances of this case.

'The judgment must be reversed and the cause remanded for further proceedings under the rule to show cause.

*Judgment reversed and procedendo awarded.*