CYRUS HUSTON AND JOHN M. HAUCK, *vs.* WILLIAM J. DITTO, ET AL.

PRACTICE: SCIRE FACIAS.—A judgment was confessed at the appearance term of Court in pursuance of a power of attorney filed in the cause, which authorized the attorney to confess judgment in the defendant's name in favor of the plaintiff, *"for whatsoever balance there may be due and unpaid* on a certain bond, and to give judgment for such sum as appears to be due on said bond, all credits made to appear to Isaac Nesbit to be allowed and deducted therefrom." The judgment, as extended, was for the penalty of the bond, to be released on payment of the sum of $4000 with interest, and a memorandum was entered in the margin of the docket, "all credits made to appear to Isaac Nesbit to be allowed." HELD:

1st. That the memorandum qualified the rights of the parties to the judgment extended, and imposed obligations on them to conform to the agreement under which it was rendered. It also obliged the referee, if he accepted the reference, to discharge its duties fairly with due notice to all concerned, and subjected his action to the supervision of the Court, to be corrected or set aside if not proper or legal.

2nd. Such being the character of the judgment, a *sci. fa.* to revive it, must, of necessity, be limited in its effects to the conditions or terms upon which it was rendered.

3rd. A *fiat* upon a *scire facias* to revive a judgment, revives it with all the powers, attributes and conditions which originally belonged to it, and which have been wholly or in part suspended by lapse of time, change of parties, or the like.

4th. A judgment subject to a discharge under the insolvent laws, should, when revived, be taken subject to the same condition or qualification, and the discharge to be availing need not again be pleaded under the *sci. fa.*

5th. That two modes of relief at law were open to the defendants, viz: motion to the Court to have the credits entered according to the agreement, upon the refusal of the referee to act, or upon the return of the *fi. fa.*; or by pleading to the *sci. fa.* such facts as were necessary to establish the credits claimed.

A JUDGMENT BY CONFESSION is not in the practice of this State considered an interlocutory judgment; the confession is taken as an admission of the whole claim for which suit is brought, unless made upon terms which are reduced to writing, and inserted by the clerk of the Court in his memorandum.

JUDGMENT-INTERLOCUTORY AND FINAL.—There are three kinds of judgments recognized by the Courts of this State. Interlocutory judgments which require some further action of the Court; final and effective judgments; and judgments final but not effective, either from the nature of the original entries, or become so by some subsequent contingency.

PRACTICE: JUDGMENT UPON TERMS.—Although there is no Act of Assembly providing for the action of the Courts in cases of judgments entered upon terms, the Courts of this State have for many years exercised the power of entering such jndgments and subsequently controlling them.

———: THE AUDITA QUERELA is said to be superceded in this State by motion.

JURISDICTION IN EQUITY.—A Court of Equity will not relieve against a judgment on the ground of its being contrary to equity, unless the party aggrieved was ignorant of the fact in question pending the suit, or it could not have been received as a defence.

A defence available at law and lost by acquiescence in the decision of a Court of original jurisdiction, cannot generally constitute ground for equitable relief.

PRACTICE IN EQUITY.—Where a cause has been heard below upon motion to dissolve the injunction and not upon final hearing, it is error in the Court to proceed to pass a final decree.

APPEAL from the Equity side of the Circuit Court for Washington County.

The bill of complaint in this case was filed on the 28th of December 1859, by the appellees, terre-tenants and executors of William Ditto, against the appellants. The material facts set forth in the bill are as follows:

On the 27th November 1847, James B. Ditto, by his attorney, confessed a judgment in Washington County Court in favor of Cyrus Huston on a bond for $4000, with interest from 27th May 1839 and costs, with this entry thereon: *"All credits made to appear to Isaac Nesbit, to be allowed."* The power of attorney authorising the judgment and filed in the case, is in these words: *"Mr. John T. Mason,* you are hereby authorised and empowered by me to confess judgment in my name in favor of Cyrus Huston, for whatever balance there may be due and unpaid on a certain bond bearing date on the 27th day of May, A. D. one thousand eight hundred and thirty-nine, under my hand and seal, and I am willing to give judgment for such sum as appears to be due on said bond; *all credits made to appear to Isaac Nesbit, to be allowed and deducted therefrom.*—Jas. B. Ditto."

Mr. Nesbit, who was the clerk of said Court, never ascertained or allowed any credits. All that he did was to receive from Huston, without Ditto's presence or knowledge, a list of such credits as he, Huston, furnished, which list was filed among the papers in the confessed judgment.

In this condition of the judgment, without any ascertainment of credits, and after the lapse of more than three years, the plaintiff, Huston, ordered a *scire facias* to revive said judgment against James B. Ditto and his terre-tenants, when the said Ditto became aware that there had been omitted from the list of credits filed by the plaintiff a credit of $2000 alleged to have been paid on the 10th day of March 1845, for which he, Ditto, held the receipt of said Huston. Pending this *scire facias*, proceedings were had to ascertain and establish the prior credits, particularly the above $2000 receipt, and a commission was issued and testimony taken under it for the purpose, and on its return Mr. Nesbit, no the 13th of August 1856, declined to act any further as referee, and filed his declination in the papers of the original judgment, and then made a correspondent entry on the docket in said original docket thus: "The referee declines to act; see papers." After this certain proceedings were had in the *scire facias* case, which finally terminated in the quashing of the writ by the plaintiff's counsel. These do not enter into the controversy, except as they furnish some proof under the commissions.

The first *scire facias* having been thus abandoned, the plaintiffs caused to be issued an *alias* writ of *sci. fa.* to revive said judgment against said James B. Ditto and his terre-tenants, which was made known to said James B. and to the defendants, terre-tenants, (appellees in this case,) returnable to November term 1858, of the Circuit Court for Washington County, the object being to affect certain lands in their possession as aliences, bound by said original judgment. The facts in relation to said land are these:

James B. Ditto owned in fee, two undivided fifths of certain real estate in Washington County, described in the

return to said *alias sci. fa.* These two undivided fifths he sold by parol contract, on the 1st April 1849, to his brother William Ditto, who entered into possession and enjoyed the same. The contract and consideration are set forth in certain proceedings in equity, referred to in the bill and introduced into the record. This contract of sale was subsequent to the confession of said judgment by James B. Ditto to Huston, which was in November 1847. William Ditto died in 1856 or thereabouts, leaving a will, and devising his real estate to be sold by his executors, who sold the same, the appellees being the purchasers. These facts alleged in the bill are admitted in the answer. One of these two undivided fifth parts was the estate of Mrs. Huston, the wife of the plaintiff in the judgment, who sold it to said James, and the bond on which the judgment was confessed was given for the purchase money.

James B. Ditto did not appear to said *scire facias* and a judgment of *fiat* was entered against him by default. But the other defendants, his alienees, and the appellees in this case, appeared to said writ by attorney, and made defence. The difficulty in the case was, that the credits to which the original defendant, James B. Ditto, was entitled, prior to the confession of said judgment, and of which he claimed the benefit secured to him by the entry, that they should be allowed when the judgment was confessed, had never been ascertained, and that a large amount of these, nearly one-half, were disputed and denied. The defendants, terre-tenants, pleaded, 1st, payment by James B. Ditto, the original defendant; 2nd, that said James had been seized of other land, whose tenants had not been notified; 3rd, that the original judgment had been confessed on certain terms and conditions expressed in the power of attorney of said James, and by entry on the docket; that the said James had paid prior to said judgment, various sums amounting to $4600, which ought to have been credited, but which had never been done; and that the person authorized to enter them had declined after-

wards to act in the premises, by which said judgment failed to have effect according to the said conditions and terms; and 4th, *nul tiel* record.

The 2nd and 3rd pleas were stricken out by the court, and the 4th plea adjudged against the terre-tenants, The only plea, that remained in the case was the first plea, of payment; and when the case came before the jury, the issue upon this plea was the only one to be tried, and under that only subsequent payments could be given in evidence under the known principle of law in such a case. Before the jury was called, the defendants, by their counsel, offered a *fiat* upon the original judgment, subject to certain credits since its rendition, which would have left the original judgment standing as at first, *subject to the credits to which it was entitled, secured by the entry of reference to Mr. Nesbitt.* This was objected to by the plaintiff, who offered to take a *fiat* subject to certain specified credits before and after the original judgment, omitting that of $2000. The defendants refused to assent to a judgment in this form, as it would put at hazard the credit claimed of $2000, and would close the door certainly at law, and as certainly in equity, to any future inquiry into its validity, and to its establishment. The parties were therefore forced to a trial upon the only plea and issue in the case, and, under the ruling of the Court, the jury were confined to such credits only as arose subsequently to the judgment. This gave rise in the progress of the trial to the various papers filed on both sides, guarding the rights of the parties. After which the jury gave a verdict against the terre-tenants for the whole amount of the original judgment, interest and costs, allowing only three small credits since the date of the original judgment, said verdict being for $8478.33. On this verdict judgment was entered, and a *fieri facias* was issued thereon and levied upon said two undivided fifths, which were advertised to be sold by the sheriff.

To arrest these proceedings at law the bill of complaint

was filed in this cause setting forth the foregoing and other facts, praying for an injunction, and for an opportunity under the orders and practice in equity, to prove and establish and have allowed all credits on the original claim anterior to the confession of said judgment, and thus to have the benefit of the entry made thereon at the time of its rendition, for the ascertainment and allowance of such credits, and also for further and other relief. The Court granted the injunction, and by agreement of the solicitors various commissions were issued to take proof after answer and replication filed, to be used at the hearing of the motion to dissolve and upon final hearing.

The answer of Huston, admitting most of the averments of the bill, denies, however, that the entry of reference to Mr. Nesbit on the original judgments formed any part of the judgment, but asserts that it was a mere authority to the clerk of the Court to enter up credits, which was done by filing the list of credits furnished by the plaintiff in the judgment. It denies the payment of the $2000 receipt of March 10th, 1845, and the genuineness of that receipt, but admits prior credits to the amount of $2420 paid at different times, as in said list. It admits that Mr. Nesbit declined to act as referee on the 13th August 1856, nearly nine years after his appointment as such. It contends that the defendants, terre-tenants, had the opportunity at law to establish all rightful credits prior and subsequent, and that chancery cannot now interfere for their relief, and claims that James B. Ditto was a material and important party, and should have been made one to the bill.

There are various exhibits with the bill and answer. The proceedings at law under the last *scire facias*, are fully given in exhibit F, with the bill, and in exhibit No. 3 with the answer, the latter being a full record of said suit. Evidence was taken under the several commissions, on the one hand to establish the credit of $2000, and on the other to disprove the fact of the payment, and attacking the genuineness of the receipt.

Exceptions were taken to the bill of complaint, but these were obviated by the amended bill and exhibits and the agreeement of counsel. The bill then stood without exceptions other than the general one, that it did not make by its allegations, charges and statements, a case proper for the exercise of equity jurisdiction.

The Court below (PERRY, J.) granted the prayers of the bill and amended bill by reforming the judgment at law against the terre-tenants, and allowing all the anterior credits contained in said list, and also the credit of $2000 in the receipt of March 10th, 1854, overruling the motion to dissolve, but ordering and decreeing that the defendant Huston should be at liberty to collect by execution the balance due to him, and directing the mode of calculation by which said balance should be ascertained, and that the complainants should pay the costs of the suit in equity. From this decree this appeal was taken.

The cause was argued before BOWIE, C, J., and BARTOL and GOLDSBOROUGH, J.

*R. H. Alvey*, for the appellants:

1. The original judgment of 1847 was final and definite in its character. It was confessed for a specific sum, the amount of the bond. It was unlike the cases of *Turner vs. Plowden,* 5 *G. & J.*, 52, *Clark vs. Digges,* 5 *Gill,* 109, and *Young & Wife vs. Reynolds,* 4 *Md. Rep.,* 375. In those cases the confessions were for such amounts as should be ascertained to be due. In this case the amount of the judgment was ascertained in the confession, and the judgment made complete and ripe for execution, and a simple power given to allow such proper credits as the defendants should make appear. This power was intended for the exclusive benefit of the defendant, and he should have taken advantage of it within a reasonable time, or else have been precluded the benefits of it. *Coates & Glenn vs. Sangston,* 5 *Md. Rep.,* 121. *Russell on Arb. & Awards,* side *p.* 473,

*top* 349; (*in* 63 *vol. Law Lib.*) 2 *Keb.*, 10 20. *Bac. Ab. Arb. F. Com. Dig., tit. Temps.* (*D.*) 2 *M. & S.*, 43, 50. 3 *M. & S.*, 145, 146.

And, inasmuch as the complainants are seeking the benefits of the credits that should have been produced to and allowed by Nesbit, and in a way different from that contemplated by the parties, it should be alleged, as a substantive ground of relief, and shewn conclusively in proof, that every thing had been done, and all proper and reasonable efforts made by the party entitled to the credits, to have them allowed under the power within a reasonable time from the rendition of the judgment; and that all such efforts were unavailing and ineffective. But there is neither allegation nor proof of any such effort made within a reasonable time; and hence the bill furnishes no ground for injunction or relief of any kind in respect of such credits. *United States vs. Robeson*, 9 *Peters*, 319, 326.

2. But if proper application had been made for the allowance of the credits, within a reasonable time and refused, or the allowance become impracticable from any cause, not the fault or neglect of the party entitled, there would then have been ample remedy at law, and, consequently, none in equity. By summary proceeding on motion to have credits ascertained and allowed, the whole controversy in regard to credits could have been settled at law; and it was the proper course to have been pursued, and furnished a complete remedy if the party was entitled to any. Having such remedy at law, the parties, therefore, have none in equity; for it is only in the absence of a remedy at law that chancery interposes to protect rights founded in and sustained by conscience, and asserted with due diligence. *Job vs. Walker*, 3 *Md. Rep.*, 129, 132. *Shafer vs. Shafer*, 6 *Md. Rep.*, 518. *United States vs. McLemore*, 4 *How.*, 286.

Or the party aggrieved by the non-allowance of credits, could have resorted to the ample remedy afforded by an *audita querela*, which is an equitable action, "and is of a

most remedial nature, and seems to have been invented, lest in any case there should be an oppressive defeat of justice, where the party has a good defence, but had not, nor has any other means to take advantage of it.'' 2 *Wms. Saunders*, 148, note 1, to case of *Turner vs. Davies*. 3 *Black. Com.*, 405. This remedy is recognized and secured by the Act of 1763, ch. 23, sec. 8, and is a proceeding of common right and *ex debito justitiæ*. 2 *Saund.*, 148, e. *f.*; 3 *Bl. Com.*, 406, in note. And it was a remedy peculiarly appropriate in view of the fact that the question of forgery was involved in the allowance of the receipt of $2000, a question of fact that could, under the proceeding by *audita querela*, have been determined by a jury; a mode of investigation that Courts of Equity are ever indisposed to interfere with. And in cases like the present, involving contested questions of fact, the Courts have driven the party to his *audita querela*, in order that the matter should be determined by the jury. 3 *Bl. Com.*, 406, in note. 1 *Salk.*, 93, 264. 1 *Ld. Raym.*, 439. 2 *Ld. Raym.*, 1295. 2 *Stra.*, 1198.

Where a remedy may be obtained at law, as in this case might have been, Courts of Equity are never to be resorted to; and especially are they averse to interfering with the right of trial by jury, where that mode of investigation can be had in the Courts of common law. 6 *G. & J.*, 495. *Adair vs. Winchester*, 7 *G. & J.*, 114. *Cook vs. Murphy*, 7 *G. & J.*, 282. 12 *G. & J.*, 477.

3. But, by negligence and delay, the party forfeited his remedy by *audita querela;* for having had ample time to obtain the allowance of the credits before the issuing of the *scire facias*, and neglected the opportunity, making no effort whatever, he could not afterwards be relieved. 1 *Rol. Abr.*, (*C.*) *pl.* 1. 2 *Wms. Saund.*, 148, a. note 1. And, if by *laches* and neglect, the party has lost his remedy by *audita querela, a fortiori*, has he lost his remedy in a Court of Equity, where *laches* and delay are never encouraged or tolerated. For if a party delays applying for an injunction until *after* judgment recovered at law, such

delay is, of itself, ground for refusing aid, unless the reason for requiring it were not, and could not, by reasonable diligence have been discovered before the trial. *Adams' Doct. Eq.*, side 197, top 459. *Dilly vs. Bernard*, 8 *G. & J.*, 186. *Protheroe vs. Foreman*, 2 *Swanst.*, 227. The bill here contains no allegation that the complainants were defeated at law by surprise or accident, nor does it aver ignorance at the time of trial of the facts set forth as the ground of relief, and in the absence of such averments, the injunction should not have been granted. 7 *Gill*, 190.

4. As to the conduct and fault of the complainants at the trial of the *scire facias* case against them. The parties after failing in the defences set up by plea to the *scire facias*, tendered a confession of judgment *fiat* for the full amount of the original judgment, deducting only subsequent credits, *and excluding all those made anterior to the original judgment of* 1847; and insisted that such judgment should be taken. They refused to take the benefit of the anterior credits, offered to be given by the plaintiff Huston. And after the jury was empannelled, and the plaintiff in the act of admitting to and instructing the jury to allow in making up their verdict, the prior credits, the defendants objected, and upon the plaintiff insisting that the credits should be allowed, they actually applied to the Court to have ruled out all of such credits, which was done.

This conduct of the parties must exclude them from all aid of a Court of Equity, as against the judgment in respect of the credits offered, and which were objected to and excluded as before stated. It was by their own persistent conduct that the receipts were not allowed.

It would be encouraging litigation to relieve against this judgment as well as contravening an established rule, "that chancery will not relieve against a judgment at law on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defence, or unless he was prevented from availing

himself of the defence by fraud or accident, or the act of the opposite party unmixed with negligence or fault on his part." *Foster vs. Wood,* 6 *John. Ch. Rep.*, 89. 2 *Lead. Ca. in Eq.*, (2d pt.) 97, in note. *Truly vs. Wanser,* 5 *How.*, 141. *Protheroe vs. Foreman,* 2 *Swanst.*, 227, 233. *Briesch vs. McCauley,* 7 *Gill,* 190. 1 *John. Ch. Rep.*, 465. *Hendrickson vs. Hinkeley,* 17 *How.*, 443.

In regard to the credits offered and which were rejected at the trial of the *scire facias* case, the maxim "that no man is entitled to the aid of a Court of Equity, when that aid becomes necessary by his own fault," becomes most appropriately and completely applicable, and must conclude that part of the case. 8 *G. & J.*, 187. 6 *G. & J.*, 243.

Whatever misapprehension may have controlled the parties in refusing to accept the benefit of the credits when offered and pressed upon them, or whatever mistake or mismanagement in pleading may have occurred, are questions wholly immaterial in this case, as they form no ground of relief against the judgment. Courts of Equity never injoin judgments because of supposed errors or mistakes in the proceedings at law. *Adams' Doct. Eq.*, 197, side, top 460. *Bateman vs. Willoe,* 1 *Sch. & Lef.*, 201. *Fowler vs. Lee,* 10 *G. & J.*, 363.

5. The question in regard to the contested receipt of $2000, is one of forgery, and therefore one of fact. The complainants have not alleged in their bill, that of their own knowledge the receipt is genuine, and having no personal knowledge could not make such an averment. The allegations of the bill, therefore, afford no evidence of the genuineness of the receipt. 7 *Paige,* 157; 8 *Paige,* 72; 9 *Paige,* 305. 3 *Danl. Chy. Prac.,* 1834 in note. *Blondheim vs. Moore,* 11 *Md. Rep.,* 365.

The case being heard on motion to dissolve the injunction, the averments of the answer are to be taken as true and controlling, unless disproved by other evidence. Code, Art. 16, sec. 103. 17 *Md. Rep.*, 408.

And the positive and unequivocal averments of the answer, as to the forgery of the receipt, together with the other equally unequivocal evidence in the cause, prove, beyond all doubt, the forgery; James B. Ditto's testimony to the contrary notwithstanding.

6. But James B. Ditto the original defendant in the judgment, and a party to the very proceedings sought to be enjoined and reformed in this cause, though released by the complainants, is not a competent witness for them, and his competency as well as the admissibility of all his testimony-in-chief, being excepted to, the exceptions should have been sustained. Being a party to the legal proceedings and liable to the plaintiff in the judgment, this witness could not be made competent by the release of the complainants. He should have been made a party to these proceedings, instead of being called as a witness to add perjury to forgery. *Field & others vs. Holland*, 6 *Cranch Rep.*, 8 to 29.

7. The lien of a judgment is a creature of the Court, and derived by construction from statutory subjection of the land to execution; and it attaches from the rendition of the judgment and continues *only for twelve years.* If the judgment is revived after that period, the lien will attach *only as a new incident*, and be operative from the date of the *fiat.* *United States vs. Morrison*, 4 *Peters*, 136. 2 *Story's Eq. Jur.*, sec. 1216. 3 *Bland*, 298. *Ib.*, 660 to 669. 2 *Bac. Abr., tit. Ex.*, 685. 3 *Co. Rep.*, 12. 7 *Wend.*, 466. *Miller vs. Allison*, 8 *G. & J.*, 38. *Murphy vs. McCord*, 12 *G. & J.*, 182; see opinion in this last case and that delivered in *Doub vs. Barnes*, 4 *Gill*, 11. *Hayden vs. Steward*, 1 *Md. Ch. Dec.*, 463, 464. *Hodges vs. Sevier*, 4 *Md. Ch. Dec.*, 382. *Warfield & Brewer vs. Keefer*, 4 *Gill*, 265.

8. If no other sufficient cause existed, the form and character of the decree, having been passed on motion to dissolve the injunction, would require its reversal. The decree, instead of being interlocutory, simply continuing the injunction until final hearing, is final in its character, and

disposes of the whole case. It leaves nothing open for determination upon final hearing. It decrees absolutely and finally the specific relief sought, instead of reserving all questions of right to such relief until final hearing of the cause. This is manifest error. *Mills vs. Hoag,* 7 *Paige,* 18. *Cooke vs. Bay,* 4 *How.* (*Miss.,*) 485. *Harny vs. Branson,* 1 *Leigh,* 108. *Blow vs. Taylor,* 4 *Hen. & Munf.,* 159. 3 *Danl. Ch. Pra.,* 1896. 1 *Bland,* 200, 201; 17 *Md. Rep.,* 408.

*Thos. S. Alexander,* for the appellees:

This case presents, for consideration, two main points of enquiry:

I. Will a Court of Equity entertain a case situated as this is, and grant the relief prayed? It will be maintained on the part of the appellees, that it is a case for equitable jurisdiction and relief; and they will rely on the following authorities for the position. 2 *Story's Eq., secs.* 887, 894. *Marine Ins. Co. vs. Hodgson,* 7 *Cranch,* 32. *Barnes vs. Dodge,* 7 *Gill,* 116, 118.

The remedy at law must be complete. *Clayton vs. Clary,* 4 *Md. Rep.,* 26. So an exception to the general rule is where the party is prevented, at law, from availing himself of a defence by the act of the opposite party, or any act over which he had no control. *Golt vs. Carr,* 6 *G. & J.,* 312. In this case the heirs and terre-tenants could not have availed themselves of any defence at law. See, also, *Little vs. Price,* 1 *Md. Chan. Dec.,* 185. 2 *Story's Eq., secs.* 885, 886 and 887.

II. If the bill be entertained, then the next question is as to the validity of the two thousand dollars receipt of March 10th, 1845, which is a question of fact.

This is proved, 1st, independently of the testimony of James B. Ditto. The hand writing is proved by William H. Whitney, and this is corroborated by Mrs. Wilson, Mr. Bull and Mr. Medcalf, as to the *time* and *circumstances,* and the *declarations* of Huston admitting payment.

2nd. By the testimony of James B. Ditto, who is a competent witness. He is not a party to the proceedings, nor is it necessary that he should have been made a party. He has no interest in the matter, and if he had any, he was fully released. His testimony is explicit as to the fact of *payment, signature,* &c. *He saw the receipt drawn and signed by Huston.* This alone, if Ditto be deemed credible, must overcome any amount of proof on the other side, founded simply upon a knowledge of Huston's hand writing, as such proof is at best nothing more than opinion and belief. And if his testimony needs support, it is furnished in the proof of Mrs. Wilson, Mr. Bull and Mr. Medcalf, already referred to.

The testimony on the other side as to the hand writing, founded upon comparison, is inadmissible, and was excepted to as such.

The case, on its merits, therefore present two questions.

1. Were the appellees entitled in fact to those credits?

2. Having failed to established this right at law, have they entitled themselves to relief in equity?

1. This point is submitted on the argument already made. All the credits claimed were allowed by the decree from which this appeal is taken. The question, therefore, is, whether there is error in making those allowances?

2. We refer to several cases for the purpose of shewing the principles on which the equitable jurisdiction may be invoked, to restrain execution of a judgment rendered against conscience.

The leading case in our own Courts on the subject is, *Barnes vs. Dodge,* 7 *Gill,* 116. It refers with approval to the case of the *Marine Ins. Co. vs. Hodgson,* 7 *Cranch,* 332, in which Ch. J. Marshall lays down the rule with singular precision.

The great question therefore is, whether or not it is *against conscience* that the judgment should be enforced? If it is conceded that the judgment is recovered for a greater sum than is really due, a case for equitable relief is

clearly made out. It must be against conscience that a party should avail himself of a legal security to recover more than he confesses he is entitled to, and if it is conceded that there is any fault in the judgment, it is discredited, and equity can have no difficulty in granting full relief.

But if it is shown by evidence *aliunde*, that the judgment covers more than is really due, the same consequence must follow, unless it is made to appear: 1. That the defence at law was clear and adequate; 2. That the party has by his own culpable default failed to avail himself of his legal remedy.

Now, if the party omits to set up his defence, the Court of Equity to which he appeals for relief, must determine for itself, whether the defence if made would have been available at law. But if being made, it is rejected by the Court of law without examination into the merits, equity must assume that the matter did not form a defence at law; for the Court of law is the exclusive judge of the extent of its own jurisdiction.

And in order to convict the party of negligence, it is necessary to show first that he was a party, or might have made himself a party, to the proceedings at law; and secondly, being a party, that he omitted to set up his defence. If he was not a party, or being a party did rely upon his matter of defence, and such defence was rejected, (I do not mean overruled on its merits,) it is impossible to say that he was guilty of any default.

Assuming these, as proper deductions from the rule, I shall show: 1. That the judgment was recovered for a larger sum than the plaintiff at law claimed to be due; 2. That the appellants were not parties to the original judgment, nor to the first *scire facias;* 3. That on their appearance to the *alias scire facias* they pleaded their defence, but the Court of law ordered that their pleas be taken from the file, doubtless for the reason that they suggested matter which a Court of law could not notice.

The original judgment was entered in the year 1847, for a sum certain, but with the stipulation that "all credits made to appear to Isaac Nesbit should be allowed." What was the character of this judgment? This is the first question. It was in the nature of a reference of the cause; and the adjudication to be made by Mr. Nesbit was to partake of the character of an award. His adjudication was to be returned to the Court, or filed in the clerk's office; and if it did not require the order of the Court for its ratification, might certainly have been corrected, or set aside on cause shown. Upon strict analogy, therefore, it would seem that the allowance of the credits claimed, or some action of the referee on the claim, is indispensable to the perfection of a judgment entered on such terms. In *Turner vs. Plowden,* 5 *G. & J.,* 52, it was adjudged that a judgment like this is a final judgment, which needs no action on the part of the Court to give it vitality as a lien. But it is not determined that an execution can be issued before the referee had made his ascertainment; nor upon which party the law casts the responsibility, or consequences resulting from his failure to perform this duty. It is assumed in the opinion of the Court, that the filing of the certificate of adjustment by the referee, was indispensable to the perfection of the judgment.

In *Clarke vs. Digges,* 5 *Gill,* 110, a judgment was confessed for the penalty of a bond with a collateral condition, to be released on payment of $—— and costs. This was held to be a final judgment; but is not binding as a judgment until the sum shall be ascertained as originally contemplated.

In *Young vs. Reynolds,* 4 *Md. Rep.,* 376, judgment was confessed for the penalty of a bond conditioned for the payment of money by instalments, "to be released on payment of such sum as B should fix." B did not act. The judgment was revived by *scire facias,* "to be released on payment of such sum as R and D should ascertain." The defendant died; R and D then made their ascertainment. The Court of

Appeals declared, that although the judgment was final, it was not effective, nor could it be so until the amount was ascertained." And this could not be done after the defendant's death. "Where persons to whom the parties have agreed to refer matters in dispute have consented to undertake the office, they ought to appoint a time and place for examining the matters, and give notice of such appointment to the parties." It is further declared, that if the defendant had been living at the time the award was made, it would have been set aside on his motion, because of the failure of the referees to give him notice; being made after his death, it was examinable in equity. "There can be no doubt that a Court of Equity would have enjoined the execution of such a judgment." "It is in the predicament of one which has been obtained, because certain equities cognizable in a Court of Equity, could not be availed of in a Court of law." See, also, *Moore vs. Garrettson*, 6 *Md. Rep.*, 444. *Shafer vs. Shafer, Ib.*, 523.

It is apparent, therefore, that there was nothing irregular in the original judgment. The defendant committed no default in confessing a judgment subject to credits to be thereafter ascertained. He was not bound to hasten the referee. He is not to be damaged by the failure of the referee to discharge his duty.

It appears that the referee at first consented to act, and received from the plaintiff to the judgment a statement of the credits which he was willing to allow. When the defendant was preparing to lay before him the evidence of his right to additional credits, the referee *declined to act.* It is not pretended that he so declined at the solicitation, or by the procurement, of the defendant. The next question then is, what is the effect or consequence of such refusal on the part of the referee to proceed after he had entered upon the discharge of his office ?

The brief of the appellants concedes, that the defendant might have been relieved from the consequences of this unforeseen conduct, by an appeal to the summary

jurisdiction of the Court of common law, or by *audita querela*. It is conceded that it would be unconscientious on the part of the plaintiff to take advantage of this misconduct on the part of the referee. In short he is to be relieved somewhere and by some process. The Court of Appeals in *Young vs. Reynolds*, as we have seen, expressly declares, that equity may relieve in such case, and that it is a case appropriately for equitable interposition.

This adjudication relieves us from the necessity of enquiring whether relief could be had by *audita querela* or by an appeal to the equitable jurisdiction of the Court of common law. No case, it is believed, can be found in which like relief was given on *audita querela*. Certainly none can be found of an early date. And the power of Courts of law to restrain their processes on considerations of equity is altogether of modern growth. Concede then, that there did exist at this time a legal remedy of the character imagined, it would not necessarily follow that equity cannot or ought not to intervene. It is not for the first time to be observed that the extension of the common law remedy to a case formerly relievable in equity, is not a reason for excluding the ancient, peculiar, and at least, concurrent, jurisdiction of Courts of Equity. 3 *Br. C. C.*, 218, by Lord Thurlow, in *Atkinson vs. Leonard.*

It is to be remembered that the present appellees were not parties to the original judgment. They are purchasers of the interest of a purchaser, from the original defendant. They are not chargeable with default in the defence of the original cause. They were not parties to the first *scire facias*. They claimed under William Ditto, who purchased from the original defendant, but who died before the service of the *scire facias*. It was in consequence of the discovery of this fact that the first *scire facias* was quashed.

The *alias scire facias* was served on the appellees. They appeared, and at once pleaded the payments made prior to the date of the judgment, and the refusal of the referee to make up his award. But this plea was stricken out on the

ground, doubtless, that it did not suggest a defence cognizable at law. In consequence of this decision they filed their bill in equity. No delay was therefore practiced by them. As soon as they were served with process, they showed their defence. They were guilty of no *laches* in the conduct of their defence after appearance.

It is conceded that the judgment was recovered for a larger sum than is due. The appellants concede that large credits are to be allowed. Hence, it would be against equity to dissolve the injunction absolutely. Suppose then that the payment of the $2000 is clearly established by the evidence, are not the appellees entitled to claim credit for this sum? In regard to the other credits which the appellants were, and are willing to allow, it may be said that the appellees were guilty of folly in declining to accept the allowances when tendered. This may be so. And they were properly charged with all the costs of litigation. But this does not prove that it would be conscientious on the part of the plaintiff to enforce payment of the entire judgment. And if the judgment is travelled into at all, or for any purpose, must not all errors detected be reformed?

In conclusion there is no plea to the jurisdiction of the Court. If, therefore, the appellees could be relieved anywhere, they are entitled to relief in equity.

Several questions appear to have been mooted in regard to the admissibility of portions of the evidence. None of these appear to be novel, or difficult of solution. I shall therefore say but little on this part of the case.

James B. Ditto is not a party to this suit. He might have been responsible only to the appellees, in the event of a recovery by the appellants against them. But the release of the appellees to him removes this objection. It is then said that he has an interest *in the question* at issue, since he remains liable as the original debtor to the appellants. The answer is that he has no interest in the *event of this suit*, since the record thereof cannot, in any contingency, be evidence either for or against him in any future litigation between him and the appellant.

Upon a question of hand-writing, comparison between the instrument in question and other instruments is inadmissible. The only clearly recognised exception to the rule seems to be where A, who is called to prove or disprove the genuineness of B's signature to the particular writing, states that he has seen B write, or has received writings purporting to be written by B, or recognized as genuine by B. Now if he will produce those very papers he may institute the comparison, and point out the resemblances and discrepancies. But if those very papers are not produced, he must speak from his general knowledge, and from the resemblances between the general character of the hand-writing of B, impressed on his memory, and the paper in question.

But again, James B. Ditto swears positively to the payment of the $2000, and to the genuineness of the receipt. Is his positive testimony on those points to be discredited by the opinions of others, in regard to the style or character of hand-writings ? One speaks of facts as within his own knowledge. He speaks the truth, or is guilty of wilful and corrupt perjury. The others express opinions, impressions, which may be correctly formed, or the reverse; which if shewn to be unfounded leave their characters for truthfulness unimpeached.

Bowie, C. J., delivered the opinion of this Court:

The primary and preliminary question in this, as in all cases of injunction to stay proceedings at law after judgment, is, had the appellees, the complainants below, adequate relief and opportunity of defence at law; or was there a defence, of which, without fault or negligence in themselves, they could not avail at law, so that it is against conscience to execute the judgment sought to be enjoined? *Story's Equity*, 887, 894. 7 *Cranch*, 332. *Barnes vs. Dodge*, 7 *Gill*, 118. *White & Tudor's Equity Cases*, vol. 2, *pt.* 2, *p.* 98. It is the settled doctrine of the English Chancery, not to relieve against a judgment at law, on the ground of its being contrary to equity, unless the party

aggrieved was ignorant of the fact in question, pending the suit, or it could not have been received as a defence. *Williams vs. Lee*, 3 *Atk.*, 223. The same principles are recognized and adopted by the Courts of Equity in this State. *Fowler vs. Lee*, 10 *G. & J.*, 358. *Prather vs. Prather*, 11 *G. & J.*, 110. *Windwart vs. Allen*, 13 *Md. Rep.*, 196. *Boyd vs. Ches. & O. C. Co.*, 17 *Md. Rep.*, 211.

The original judgment in this case differs from those referred to and reported in 5 *G. & J.*, 54, 5 *Gill*, 109, and 4 *Md. Rep.*, but not in the quality of finality. In each of those the judgment, as rendered, was held to be final and not interlocutory, because no other act of the Court was required.

In *Turner vs. Plowden, Adm'r of Llewellyn*, 5 *G. & J.*, 52, "the judgment was in the usual form of judgments against administrators, but had annexed to it the following by way of memorandum: 'Judgment was rendered in this cause on the 9th day of November, in the year 1831, for the damages laid in the declaration and costs of suit; to be released on payment of such sum as Enoch J. Millard shall say is due, and costs. This judgment to bind a proportion of assets, and soforth, to be ascertained by reference to Enoch J. Millard." Dorsey, J., said: The judgment rendered upon it, (the account,) was a final judgment. To make it absolute as far as regarded the amount due on the account, no further action of the Court was necessary. The filing of Enoch J. Millard's certificate was all that was required for that purpose. The account was extinguished by the judgment, and could therefore never afterwards be available to the defendant, either as a substantive cause of action or by way of discount or set off.

In *Clark vs. Digges*, 5 *Gill*, 118, Archer, J., said: "The writ of *scire facias* is not defective on its face, it states a good judgment. The judgment is for the penalty and costs, to be released upon payment of ——. The amount of the sum to be paid is not stated. From this entry of the judgment, we think it indicates a judgment by confession,

for the penalty, to be released upon the payment of such a sum as might thereafter be agreed upon; and that it is not binding as a judgment until the sum shall be ascertained as originally contemplated. It is not an interlocutory judgment. In *Young & Wife, et al., vs. Reynolds*, 4 *Md. Rep.*, 381, this Court said: "The proceedings in the cause show, that at May term 1833, Joseph W. Reynolds obtained a judgment in Calvert County Court against Thomas Mackall, to be released on the payment of such sum as should be ascertained by J. M. Baden. The amount was never fixed by him. * * * * "There can be no doubt, that the original judgment merged the bond, nor that it was paid. 7 *Gill*, 416. *Jarvis vs. Plowden*, 5 *G. & J.*, 52. But although the judgment was final, *it was not effective, nor could it be so until the amount was ascertained*, and this was not done and entered of record, until after the death of Thomas Mackall." 4 *Md. Rep.*, 381.

"A judgment by confession is not, in our practice, considered an interlocutory judgment; it is not necessary to have the damages assessed, not even in the case of a bond, with collateral condition. The confession is considered as an admission of the whole claim, unless it is made, as it frequently is, on terms. The terms, whatever they may be, are in that case reduced to writing and given to the clerk, who inserts them in his memorandum. * * * * The terms sometimes refer the ascertainment of the release to some third person, who must then file his award before there can be execution; but such judgment is final, so far as to merge and extinguish the claims on which it is founded." *Evans' Prac.*, 339.

It appears from these citations, that there are three kinds of judgments recognized by our Courts. Interlocutory judgments, which require some further action of the Court; final and effective judgments; and final but not effective, either from the nature of the original entries, or become so by some subsequent contingency.

The power of the Courts to refer cases before judgment

is recognized by Acts of Assembly, and the mode of subsequent action in such cases, is fully prescribed in 1778, ch. 21, sec. 8, 1785, ch. 80, sec. 11; but there is no Act of Assembly providing for the action of the Court, in cases of judgments entered upon terms, yet the Courts have for many years exercised the power of entering such judgments and subsequently controlling them.

Whether this is one of the inherent powers of the Courts of original jurisdiction, it is unnecessary to inquire. If such a power does not exist, judgments upon terms would often be a nullity, for a non-effective judgment, one which is not binding until the amount is ascertained, is only a judgment in name, except in its power of merging and extinguishing the original cause of action; an incident, rather injurious than beneficial, if the Courts have not power to render effective what is otherwise inoperative. These entries have been introduced to promote despatch, diminish the delays and expense of litigation, and are substituted often for the action of a jury in matters of mere calculation. They are *quasi* references, with leave of the Court and consent of the parties after judgment. The original cause of action is merged, the details to be ascertained in the manner pointed out by the terms filed or to be filed.

The original judgment in this case was confessed at the appearance term of the Court in pursuance of a power of attorney filed in the cause, which authorized the attorney to confess judgment in the defendant's name, in favor of the plaintiff, *"for whatever balance there may be due* and unpaid on a certain bond, and to give judgment for such sum as appears to be due on said bond, all credits made to appear to Isaac Nesbit to be allowed and deducted therefrom."

The judgment as extended, was for the penalty of the bond, to be released on payment of the sum of $4000 with interest, and a memorandum entered in the margin of the docket, "all credits made to appear to Isaac Nesbit to be allowed." Judge Archer referring to the entry in the case of *Clark vs. Digges*, above cited, where the judgment was

for the penalty and costs, to be released on payment of
——, says, it indicates a judgment by confession for the
penalty, to be released upon payment of such sum as might
thereafter be agreed upon; and that it was not binding as
a judgment, until the sum shall be ascertained as origi-
nally contemplated." 5 *Gill*, 118. What was inferred
from a part of the entry being in blank in the case cited,
is expressed by the power of attorney and the memoran-
dum of the clerk in the case before us.

The memorandum qualified the rights of the parties to
the judgment as extended, and imposed obligations on them
to conform to the agreement under which it was rendered.
It also obliged the referee, if he accepted the office, to dis-
charge it fairly, with due notice to all concerned, and sub-
jected his action to the supervision of the Court, to be cor-
rected or set aside, if not proper or legal. This being the
character of the judgment, the *sci fa.*, to revive it, must of
necessity be limited, in its effect, to the conditions or terms
upon which it was rendered. When revived, it could not
be of greater validity than when obtained; if not effective
at first, it could not be rendered effective by a mere revival
on the original terms, which left the credits to be ascer-
tained and allowed. *Vide Moore vs. Garrettson*, hereafter
cited, 6 *Md. Rep.*, 448.

The office of a *sci. fa.* embraces and extends to inqui-
ries of this character. It is founded on matters partly of
record and partly *in pais.* The several suggestions of the
plaintiff, introduced into the writ, may be traversed, and
any matter in discharge of the obligation may be shown.
*Ev. Pr.*, 173. Generally, a *fiat* upon a *scire facias* to re-
vive a judgment, reinvests it with all the powers, attri-
butes and conditions which originally belonged to it, and
which have been wholly or in part suspended by lapse of
time, change of parties, or the like. Therefore a judgment
subject to a discharge under the insolvent law, should,
when revived, be taken subject to the same condition or
qualification; and the discharge, to be availing, need not

again be pleaded under the *sci. fa. Moore vs. Garrettson,* 6 *Md. Rep.,* 448.

In *Shafer vs. Shafer,* 6 *Md. Rep.,* 518, a judgment was entered for the appellant vs. the appellee, on the 20th March 1847, to be released on payment of such sum as Isaac Nesbit shall ascertain to be due. On the 31st of August 1847, Nesbit, (the clerk of the Court,) filed an award finding a certain sum to be due with interest, till paid, and costs of suit, with this note, viz: ''The counsel for the plaintiff agrees, if the defendant shall hereafter show any further credits to which he would be legally entitled, the same shall be allowed him.''

On the 20th March 1848, a *fi. fa.* was issued on this judgment, and time given to the sheriff to make his return, till the 4th Monday of March 1851. In the mean time on the 8th of May 1848, while that writ was in the sheriff's hands, the parties entered into another reference, with power to appoint an umpire. On the 31st of December 1850, Nesbit filed an additional award and directed the sheriff to credit the *fi. fa.* with the sum of $323.10. This credit the sheriff gave, and made the balance and returned the writ accordingly. The plaintiff moved at November term 1851, to quash this return, remand the *fi. fa.* to levy the amount due on the judgment, or to direct an *alias fi. fa.,* and a rule to show cause was laid on the defendant.

It was held that Nesbit's power over the judgment ceased from May 1848, when the second reference was agreed to, and his last award was void and should have been set aside by the Court. That the effect of this submission upon the judgment and *fi. fa.* were such, that although the second submission was not effective, yet the defendant not being alone in default, the consequences should not be visited on him alone; that a Court of Equity would have interferred to prevent such an unjust proceeding. That the defendant might, by motion against the *fi. fa.,* or to have credits entered according to the submission and award, have availed himself of the equities growing out of these

acts of the parties, upon the principles adjudged in *Job vs. Walker*, 3 *Md. Rep.*, 129. The motion of the appellant to quash the sheriff's return and reject the credits allowed by the second award, (of Nesbit,) and order other process, and the rule to show cause, necessarily had the effect of bringing the whole matter before the Court, to be determined according to the agreement of the parties, &c. And if on the hearing it appeared that for any cause the referee could not return the award, the Court should have gone into an examination of demands between the parties, in order to have ascertained the true state of their accounts, that proper credits might have been entered on the judgment. "In this way we think justice might have been effected without resorting to the equity side of the Court, and until this controversy, as to credits, was ended, the plaintiff was not entitled to further process."

The judgment in *Shafer's* case, after Nesbit's first award, was, in effect, the same with the judgment in the present case, *i. e.*, a judgment for an ascertained sum and costs, with a memorandum, if the defendant shall show any further credits the same shall be allowed him. The agreement to refer to other referees, suspended Nesbit's power to make further allowances in *Shafer's* case. His refusal to act, prevented the defendant from showing credits in this case. Thus far the cases are parallel, and the conclusion of the Court, "if upon the hearing it appeared that, for any cause, the referee could not return the award, the Court should have gone into an examination of the demands between the parties," applies equally to this.

The decision in *Job vs. Walker*, 3 *Md. Rep.*, 129, limits the interference of the Court upon motion to any matter which has arisen *after judgment*, in all cases where the party would be entitled to relief on *audita querela*, but the argument and decision of the Court in *Shafer's* case, has no such restriction, it authorises an examination of demands between the parties to ascertain the true state of their accounts, assuming in fact an unlimited equitable control

Huston, et al., *vs.* Ditto, et al.

to effect justice without resorting to the equity side of the Court. The *audita querela* is said to be superseded in this State by motion.

It thus appears from the authorities cited, two modes of relief at law were open to the appellees, viz: motion to the Court to have the credits entered according to the agreement, upon the refusal of the referee to act, or upon the return of the *fi. fa.*, or by pleading to the *sci. fa.* such facts as were necessary to establish the credits claimed. The appellees adopted the latter cause, pleading a series of pleas, some of which were, upon motion, set aside by the Court below; whether for matter of form or substance does not appear, and it is not for this Court to inquire, collaterally, if such disposition was erroneous or not. The appellees having acquiesced in that decision, are concluded by the judgment of the Court. They cannot call upon this Court, by a bill in equity, to review questions which would properly have arisen upon appeal.

A defence which was available at law and lost by acquiescence in the decision of the Court of original jurisdiction, cannot generally constitute ground for equitable relief. *Simpson vs. Lord Howden*, 3 *My. & Cr.*, 108. *White & Tudor's Ca. in Eq.*, 89. *Beall vs. Pearce*, 12 *Md. Rep.*, 566. *Beall vs. Brown*, 7 *Md. Rep.*, 396. *Alexander, et al., vs. Mayor & C. C. of Balt.*, 5 *Gill*, 398.

Having disposed of the preliminary question, the secondary points arising out of the evidence, are only important as far as the opinion of this Court upon the facts, might operate upon the action of the parties towards each other. Although the appellees, by omitting to prosecute their defence at law, have lost the opportunity of obtaining the credits to which the bond was liable prior to the first judgment, and which are admitted by the appellants to be just, this Court thinks, in "*foro conscientiæ*" they, the undisputed credits, should be allowed, notwithstanding they were rejected by the appellees' counsel when tendered, because the appellants would not allow all the appellees' claimed.

This cause having been heard below upon motion to dissolve the injunction, and not upon final hearing, it was error in the Court to proceed to pass a final decree; the most which the appellees could have asked under such circumstances, if they had succeeded in maintaining their motion, would have been a continuance of the injunction until final hearing. For these reasons the decree below must be reversed and the cause remanded.

*Decree reversed and cause remanded.*

(Decided Dec'r 7th, 1863.)